## WRANSLOW HOLTON *v.* MORGAN WHITNEY.

*Acquiescence in division fence for fifteen years. Adverse possession. Husband and wife.*

A., who was in possession, by virtue of his marital relation, of the land of his wife, who survived him, agreed with B., an adjoining proprietor, upon a division fence between them, and acquiesced in it until his death, ten years after its erection. His widow took possession of the same land immediately after his death, and ever afterwards acquiesced in the division fence. B. also acquiesced in and assisted in maintaining it for more than fifteen years after it was built. Fourteen years after A's death, B's grantee moved the fence so as to include more land within his farm. *Held,* in ejectment for the land so taken, brought by the grantee of A's widow against B's grantee, that after B. had acquiesced in the fence for fifteen years after its erection, he and his grantee were estopped from denying that it constituted the true division line; and therefore that the plaintiff must recover.

The duration of the possession by a husband, of land claimed by him to belong to his wife, and to which he made no claim in any other right, may be added to the duration of his widow's possession, immediately following his death, to make a possession of fifteen years against an adverse claimant, and thus to sustain the title of the widow or her grantee.

EJECTMENT for a piece of land in Putney. Plea, the general issue, and trial by jury, at the September Term, 1856,—UNDERWOOD, J., presiding.

The plaintiff put in evidence a deed from David Leavitt to Mercy Steele, dated September 12, 1822, of a tract of land in Putney, containing forty acres, and also a deed of the same land from the administrator of Mercy Adams' estate to the plaintiff, dated March 27th, 1850.

It appeared on trial that Mercy Steele, under whom the plaintiff claimed, was married to Daniel Adams in 1822, that Adams died in 1838, and his widow, Mercy, in 1849. Adams and his wife resided on the premises conveyed to her by Leavitt, from the time of their marriage until his death, and the farm was carried on by Adams during his life, and afterwards by his widow until her decease.

In 1828, Theophilus and David Crawford purchased and received a deed of the farm, lying next west of Mercy Adams' land, from Thomas Greene, and went into possession of, and occupied it until

the spring of 1849, when they deeded it to the defendant; describing it in the deed as bounded " on the east by land owned or supposed to be owned by Mercy Adams."

It further appeared that prior to 1828, there had never been any division fence between these two farms, but in that year, soon after the Crawfords purchased their farm, a fence was made between them. The south half of this fence was made by the Crawfords, of posts and boards, and was ever after maintained by them. The north half was built by Daniel Adams, of poles, and was maintained by him during his life, and afterwards by his widow, Mercy Adams, and after her death by the plaintiff, until the defendant removed it as hereinafter stated.

This fence cut off about one hundred square rods of land from the east end of a three acre piece of land, which in 1808, was deeded by James Black to Jonathan Blood, and in 1809, by Blood to one Talbot, and in 1817, by Talbot to Greene, of whom the Crawfords purchased as above mentioned.

These one hundred square rods were by this fence enclosed with the Adams farm, and was the land in controversy in this suit.

The plaintiff gave evidence tending to show that when this fence was built, the land on both sides of it was covered with trees, but that the trees were less dense on the east side, and that grass grew among them, and that Daniel Adams' cattle ran and depastured on that side of the line of the fence, and also that both Daniel and Mercy Adams, after her husband's death, were in the habit of cutting fire-wood on the disputed land, by cutting out the decaying trees. The plaintiff's evidence also tended to show that the land in dispute was a high knoll of little value, sloping off to the east and south, and that before this fence was built, Adams' cattle ranged in the woods on the land in question, and also on the land of the Crawfords; and that the Crawfords and Daniel Adams agreed to build a fence between them, and accordingly built the one above described. David Crawford was a witness, and testified " we meant to build the fence on the line, or to keep pretty near it. Adams' cattle ranged in our woods; we wanted a line; I suppose there was an agreement about building the fence."

In November, 1852, the defendant moved this pole fence six or seven rods eastwardly, and took possession of the land in dispute, and

has ever since been in possession, claiming to be the owner thereof.

The defendant gave evidence tending to show that Daniel Adams employed men to carry on the farm owned by his wife, and on several occasions told them not to cut wood upon the land in dispute, for he did not own it, but it belonged to the Crawfords.

There was no evidence that the Crawfords ever actually occupied any of the land east of the pole fence, as built by Adams, or had any possession thereof, unless constructively by virtue of the deeds in their chain of title.

The defendant requested the court to charge the jury, among other things, 1st, that Mercy Adams could gain no title by possession to the land in question, from 1828, when the fence was made to 1838, when her husband died, because she was during that time a *feme covert*, and had herself no right of entry or possession, the possession, if any, having been in her husband; 2nd, that Mercy Adams, or those claiming under her, could not, after 1838, gain title by possession because the fence was removed to its present position by the defendant in 1852, since which time he had been in possession of the land in question; 3d, that as Daniel Adams was only in possession from 1828 to his death in 1838, he obtained no title by possession; that Mercy Adams, not being her husband's heir, could derive no title from him, or by reason of his possession; and that as she, and those claiming under her, occupied only from 1838 to 1852, less than fifteen years, the plaintiff could not recover.

But the court refused so to charge the jury, but in addition to other things not excepted to, charged them that if from all the evidence in the case they found that Daniel Adams and the Crawfords agreed upon the line of the board and pole fence above described, as the division fence between them; and that for fifteen years thereafter, the Crawfords on the one hand, and Daniel Adams, and his widow, after his death, on the other, maintained and acquiesced in the fence as the division fence between their farms, and exercised no acts of ownership of the land on the side of this fence opposite to their respective farms, then the defendant was not justified in removing the fence, and the plaintiff was entitled to recover.

The jury returned a verdict for the plaintiff.

To the refusal of the court to charge as requested, and to so much of the charge as is above recited, the defendant excepted.

*W. C. Bradley* and *E. Kirkland,* for the plaintiff.

It was error in the county court not to charge as requested by the defendant, because

*a.* The case finds that the plaintiff had no title but by possession. The evidence no where shows " fifteen years uninterrupted possession in him, or his grantors," for

*b.* He derives title solely through Mercy Adams, by virtue of a deed from her administrator, dated March 27, 1850. Prior to 1828, there was no division fence, and no title by possession would begin to be acquired till then.

*c.* Mercy Adams was a *feme covert* from 1822 till 1828. During coverture she could acquire no property of her own ; *Brooks* v. *Sutton,* 2 P. Williams 632 ; *Holton* v. *Whitney,* 28 Vt. 448.

*d.* Mercy Adams began to acquire title by possession in 1838, died in 1849 ; her administrator conveyed to the plaintiff in 1850, and the land was enclosed by the defendant in 1852, who has kept it ever since, so that there has been but fourteen years of possession by the plaintiff or his grantors, not time enough to give title by possession.

*e.* Daniel Adams could acquire no title by possession, as he only occupied ten years, from 1828 to 1838.

*f.* Mercy Adams could acquire no title from her husband, not being his heir, nor administratix. Had his title been perfect, all she was entitled to was dower.

*g.* Mercy Adams having no title, her administrator could convey none to the plaintiff. The defendant, being in possession, will hold the land against all but the person having the title.

*Keyes & Howe,* for the plaintiff.

I. All the defendant's requests to the court to charge the jury are substantially the same, and are based upon the position that the acquiescence for the ten years of the occupancy by Adams, cannot be added to the acquiescence for five years under the occupancy of Mercy Adams, to make fifteen years.

*a.* The principle of law is well settled that successive occupations may be added to make out the fifteen years; *Shepard* v. *Hayes,* 16 Vt. 492; *Brown* v. *Edson,* 23 Vt. 450.

*b.* The inchoate right, growing out of the acquiescence of the Crawfords in the division fence, does not belong to the *person,* but

Holton *v.* Whitney.

is an incident of the *farm*, and goes with it. It was a line between the *farms*, and Daniel Adams as tenant, agent or husband of Mercy Adams, agreed upon and occupied to that fence as the *line of the farms*; *Catlin* v. *Hayden*, 1 Vt. 384: *Hall* v. *Coventry*, 4 Vt. 297.

II. The Crawfords, and those claiming under them, are estopped from setting up any other line, having acquiesced in this for fifteen years; *White* v. *Everest*, 1 Vt. 188; *Beecher* v. *Parmelee*, 9 Vt. 350; *Burton* v. *Lazelle*, 16 Vt. 161; *Crowell* v. *Bebee*, 10 Vt 35; *Ackley* v. *Buck*, 18 Vt. 400; *Brown* v. *Edson*, 23 Vt. 450; *Spaulding* v. *Warren*, 25 Vt. 323; *French* v. *Pierce*, 8 Conn. 440; *McCormick* v. *Barnum*, 10 Wend. 110; *Rockwell* v. *Adams*, 7 Cow. 762; *Jackson* v. *Van Corlear*, 11 Johns. 127; *Jackson* v. *Vedder*, 3 Johns. 11; *Jackson* v. *Ogden*, 7 Johns. 241; *Jackson* v. *Freer*, 17 Johns. 31; *Clark* v. *Tabor*, 28 Vt. 223.

The opinion of the court was delivered by

PIERPOINT, J. The case shows that in April, 1828, Mercy Adams, the wife of Daniel Adams, and the person under whom the plaintiff claims title to the land in question, and Theophilus and David Crawford, the persons under whom the defendant claims title, were the owners of adjoining tracts of land; that Daniel Adams, by virtue of his rights as the husband of the said Mercy was in the possession and occupation of the tract owned by her, and that the Crawfords were in the occupation of the tract belonging to them; that prior to 1828, there had been no division fence between these two tracts of land, but that early in that year Daniel Adams and the Crawfords agreed to build, and did build, a division fence between them; that in making such fence the small piece of land now in controversy was left in the same enclosure with Mercy Adams' farm; that this fence was kept up by the said parties as their only division fence until 1838, when Daniel Adams died, and *from* that time by Mercy Adams, until June, 1849, when she died; and that in 1850 her administrator sold her land, including the land in controversy, to the plaintiff.

In April, 1849, the Crawfords sold their tract to the defendant, and the defendant, in 1852, removed the fence so as to enclose

within his farm the land in dispute, claiming that it belonged to the Crawford farm, and was conveyed to him by their deed, and that the fence when built, was not put upon the true line between said two lots. Thereupon the plaintiff brought this suit.

It is claimed on the part of the defendant, that the charge of the court below was erroneous, inasmuch as the court told the jury that if they found from the evidence that Daniel Adams and the Crawfords agreed upon the line between them, and built their fence thereon as the division line of said farms in 1828, and the Crawfords and Daniel Adams and his widow after him, for the period of fifteen years, acquiesced in and recognized said line, and kept up such fence as the division fence, the defendant was not justified in removing it.

The doctrine that when adjoining proprietors agree upon a division line between them, and acquiesce therein for fifteen years, they will be bound thereby, has been recognized in repeated decisions in this state, and is now too well settled to be questioned, but it is objected in this case that the fee of the land, on the one side, was in the wife of Daniel Adams; that he was entitled to and had the possession of the land, but that he had no power to make any agreement as to a division line, and that his widow, after his death, was not bound by such agreement and cannot avail herself of his acquiesence in the line, or of his possession of the land embraced within the fence.

We think this objection is not well founded. Adams was in the possession of the land, and was entitled to the possession up to the time of his death. It was certainly competent for him to agree with the Crawfords on a division line between their farms. How far his wife would be bound by such an agreement, if after his death she had repudiated it, is a question we are not now called upon to decide; it is sufficient to say that neither she nor those who claim under her, have ever objected to it, but are here insisting upon it as a binding agreement.

That the Crawfords were competent to agree on such a division line is not questioned; that they did agree in such line and acquiesce in it and occupy up to it, as a division line for fifteen years, must have been found by the jury under the charge of the court,

and we think that now they, and all claiming under them, are estopped from denying it, and that the line indicated by such division fence must be regarded as the true line between said lots. Indeed, it may fairly be inferred from the deed of the Crawfords to the defendant, that they then so regarded it, and described it as the easterly boundary of the tract conveyed.

The defendant also insists that the county court erred in not charging the jury as requested by him. We think, under the facts as detailed in the bill of exceptions, the defendant was not entitled to the charge he requested. The evidence tended to show and the jury must have so found, that the Crawfords and Adams, when they agreed upon the line and built the fence did it, understanding on both sides that it was to be the division between the land owned by Mercy Adams on the one side and the Crawfords on the other; that each occupied up to and acquiesced in it as the division line between the two lots; that while Adams had the sole and exclusive possession of the land, so that his declarations were admissible to show the character of that possession, as heretofore decided in this case, and reported in the 28 Vt. 448, still he had this possession and claimed to exercise his right then solely by virtue of his being the husband of Mercy Adams, and on the ground that the title to the land was in her, and that the said division fence was the boundary of her land; that he occupied it because it was hers, without claiming it as his own or in any manner asserting a right therein, at variance, or in any way inconsistent with the title of the said Mercy Adams.

This possession was continued by him down to the time of his death, when the possession reverted to his wife, and she continued to occupy and possess the same premises until her death, which took place in 1849, a period of over twenty-one years after the erection of the division fence, and the question now is, can Mercy Adams or her representatives, derive any benefit from the possession of her husband? We think, inasmuch as the husband made no claim that he was in possession in his own right, or on any other ground than that the land belonged to his wife, and as upon his death the wife took and continued the possession in the same manner, and claimed the land as her own; that the possession of the husband,

under such circumstance should inure to the benefit of the wife, and that she can avail herself of it the same as though she had occupied it for fifteen years herself.

We think, therefore, that the county court did not err in their charge or in their refusal to charge as the defendant requested.

The result is, the judgment of the county court is affirmed.