PORTER H. WHITFORD, EX'R v. LEVERETT CROOKS AND MAJOR B. WESTON.

*Ejectment—Adverse possession—Estoppel by judgment.*

1. Adverse possession is not broken by deeding the land away if the grantor continues in possession and takes back a mortgage for purchase money which he afterwards forecloses and under which he himself becomes foreclosure purchaser.    And it is immaterial that the foreclosure proceedings are defective, if the possession is retained.

2. Ejectment was brought against the executors of an estate, and they prevailed.    The executor of one of the heirs, to whom the rest had conveyed their interests, afterwards brought ejectment for the same land against a grantee of the plaintiff in the first action.    *Held,* that the former judgment operated as an estoppel against such grantee. And if all the heirs united in defending the first suit the estoppel would not be affected by a question whether, as between one of the heirs and the ancestor, the title was in one or the other.

Error to Kalamazoo.    (Mills, J.)    June 5.—June 25.

EJECTMENT.    Plaintiff brings error.    Reversed.

*Breese & Stearns* for appellant.    As to the point that the heirs were concluded by the former judgment, cited : *Cunningham v. Ashley* 45 Cal. 485 ; *Meeks v. Vassault* 3 Sawy. 206 ; 1 Greenl. Ev., 522, 523, 535, 536 ; *Russell v. Lasher* 4 Barb. 232 ; *Castle v. Noyes* 4 Ker. 329.

*Howard & Roos* for appellees. All estoppels must be mutual: 1 Greenl. Ev. § 524; Bigelow on Estoppel, 46, 47; *McDonald v. Gregory* 41 Ia. 513; *Cobb v. Little* 2 Me. 261; a judgment is never an estoppel except as between the same parties or their privies: Freeman on Judgments, §§ 162 and 152; *Meyers v. Johnson County* 14 Ia. 48; *Stoddard v. Berton,* 41 Ia. 582; *Mayo v. Wood* 50 Cal. 171; *Aspden v. Nixon* 4 How. 467; *Smith v. Sherwood* 4 Conn. 276; *Bradford v. Bradford* 5 Conn. 127; *Fifield v. Edwards* 39 Mich. 264; *Tucker v. Rohrback* 13 Mich. 73.

COOLEY, C. J. The plaintiff as executor of Emeline A. T. Whitford brought ejectment for land described as the south half of the southwest quarter of section five in township two south of range ten west, in the county of Kalamazoo.

It appeared in evidence that on October 31, 1853, Frederick Booker gave to Seth Wheelock a deed of the whole southwest quarter of said section five, and it is claimed that Wheelock took possession claiming title, and held and occupied the same until his death, which occurred June 11, 1868. Wheelock left surviving him his widow, Christiana and five children of whom Emeline A. T. Whitford was one. He also left a will, which was duly probated, of which the executors named were the widow and Porter H. Whitford. No disposition of this quarter section was made by the will, and the executors assumed the possession and management. March 29, 1869, John W. Kean commenced an action of ejectment against the executors, and the heirs all united in employing counsel and assuming the defence. The action involved the fee of the land; Kean claiming to be owner of the original title, and the executors and heirs of Wheelock claiming that the fee was in him at his death. The result of the suit was that Kean recovered judgment for the north half of the quarter section, and the defendants for the south half.

In the fall of 1878 the other heirs of Wheelock united in conveying their interests in the south half to Emeline A. T. Whitford.

Kean, after his ejectment suit was determined, gave a deed

of the lot which he had failed to recover to one Aaron Benedict, and Benedict, it is claimed on the part of the defendant Crooks, deeded to him in December, 1873. The deed, however, was destroyed without being recorded, and another was obtained in June, 1874, which was put upon record. Crooks went into the possession of the land in the spring of 1874. One of the questions made in the case was, whether Crooks did not obtain possession by consent of Porter H. Whitford, one of the executors of Wheelock, and on an agreement that he would take no advantage of it. This will be referred to again. He refused to surrender possession on demand, and this suit was thereupon instituted.

Plaintiff in this suit claimed to have shown himself entitled to recover on four grounds:

1. Booker, when he conveyed to Seth Wheelock, was owner of tax titles for the land for the years 1846, 1849, 1850, 1851 and 1852. These titles were prima facie valid, and plaintiff insists they were not successfully impeached.

2. Seth Wheelock and parties claiming under him had been in possession of the land claiming title for twenty-one years, and thereby, as is claimed, a title by adverse possession had been perfected.

3. The deed from Kean to Benedict, and that from Benedict to Crooks, put Crooks in no better position than Kean himself stood in. But the recovery against Kean was an estoppel as against him, and is therefore an estoppel as against Crooks.

4. Crooks obtained possession under the executors of Wheelock, and on the agreement that he would take no advantage of it. And this estops him from asserting title in this suit.

Of these several claims, the first, second and third were ruled against by the trial judge, and the fourth was submitted to the jury upon conflicting evidence.

Whether any error was committed in ruling against the tax deeds, we do not deem it necessary to consider.

On the question of adverse possession, we think the judge erred in instructing the jury, as he did, that as matter of law

the plaintiff did not acquire title to the land by adverse possession.

Seth Wheelock, as has been stated, went into possession of the land in 1853, and the evidence for the plaintiff is that he continued in possession until his death. It appears, however, that on February 13, 1864, he gave a deed of the land to John W. Wheelock, his son, taking back a mortgage for purchase money. Proceedings were subsequently had to foreclose this mortgage in chancery, a decree was obtained, and a sale made, at which the mortgagee became purchaser. The mortgagor was brought in by publication, and it is said the proceedings were fatally defective. But whether they were defective or not we think a question of no moment. If the evidence for the plaintiff is true, Seth Wheelock was in possession continuously, claiming either as owner or as mortgagee of the very title of which, till the mortgage was given, he had claimed to be owner, and the executors and heirs have continuously since his death claimed the title under him. From first to last, therefore, the possession and the claim have been under the possession taken by Seth Wheelock in 1853; and if the jury believed the evidence, nothing more was essential. *Scheetz v. Fitzwater* 5 Penn. St. 126 ; *Melvin v. Prop'rs &c.* 5 Met. 15 ; *Sawyer v. Kendall* 10 Cush. 241; *Williams v. Dongan* 20 Mo. 186 ; *St. Louis v. Gorman* 29 Mo. 593 ; *Shaw v. Nicholay* 30 Mo. 99 ; *Holton v. Whitney* 30 Vt. 405 ; *McNeely v. Langan* 22 Ohio St. 32 ; *Nelson v. Trigg* 4 Lea 705.

But the judge erred also in the instruction respecting the effect of the judgment in the suit brought by Kean. Kean asserted and endeavored to establish a title in fee, and the defendants, standing for and representing the heirs of Seth Wheelock, and having under the statute a right to the possession as representing the heirs, relied upon a title in fee in their testator. All parties interested in the estate of Seth Wheelock, including John W. Wheelock, united in defending the suit; and if the judgment had passed against the executors, the heirs would have been estopped from contesting the judgment afterwards. But if this is the case, they

would on the other hand be entitled to the benefit of the estoppel as against Kean and all claiming in privity with him afterwards. And this estoppel would not be affected by the question whether, as matter of fact, the title as between Seth Wheelock and his son John was in the one or the other.

The judge erred also in his instructions respecting the fourth branch of the plaintiff's case, in assuming, as he did, that there was evidence from which the jury might draw the conclusion that the defendant took possession under the executors, and afterwards abandoned that possession, and took it again without their consent and adversely to the estate. We find no such evidence in the record. On the contrary, the defendant himself testified that he had continued in the occupancy of the land from the first. But this, as well as the claim under the tax titles, would seem to be immaterial in view of what is said on other branches of the case

A new trial must be ordered.

CAMPBELL and CHAMPLIN, JJ. concurred.

SHERWOOD, J. did not participate in the decision of this case.