# KAWAI K. GEORGE *vs.* HANAKAULANI HOLT.

## EXCEPTIONS.

HEARING, APRIL 27, 1893.            DECISION, MAY 11, 1893.

### JUDD, C.J., BICKERTON AND FREAR, JJ.

An exception may be allowed to the refusal or denial of a motion for a new trial, on the ground that the verdict is contrary to the weight of evidence.

The statute of limitations of real actions may run in favor of a married woman. The husband's possession in law, inures to the benefit of his wife.

An invalid or defective title, if believed to be good, will be operative to give effect to a possession taken and held under it.

In addition to evidence of title by inheritance, defendant put on evidence showing open, adverse and continuous possession of the land for over twenty years. This was not rebutted by plaintiff. Held, the jury must have disregarded this defense.

New trial ordered.

### OPINION OF THE COURT, BY JUDD, C.J.

A verdict having been rendered in favor of plaintiff in this action, it being in ejectment to recover a part of the land described in Royal Patent No. 1730 to Kekuhaupio, the defendant excepted thereto and moved for a new trial on the ground that the verdict was contrary to law and evidence, which motion was denied by the Circuit Judge presiding at the trial, and exceptions thereto were taken and allowed to this Court.

Both the plaintiff and defendant claimed to be entitled to the land by virtue of their relationship to one Kapu, who died December 25, 1870, each denying the other's pedigree. Plaintiff claimed to be grand nephew of Kapu, and defendant claimed to be his grand daughter. The plaintiff put on evi-

dence to show his own relationship and to disprove defendant's relationship. Defendant also introduced evidence to show her relationship and to disprove plaintiff's, and also evidence tending to show that she had had possession of the land since Kapu's death. Plaintiff put on no evidence in rebuttal of defendant's defense of adverse possession, and claims that it is insufficiently established.

We are met with the objection by plaintiff's counsel that the discretion exercised by a trial Judge in refusing to grant a new trial, is not the subject of exception, as the appellate Court cannot revise or review the discretion of the trial Court in refusing to grant a new trial. Citing 134 Mass. 190, 130 Mass. 455, 123 Mass. 367, 77 Mass. 274, and other Massachusetts cases. We notice that the right of revision will be exercised more freely by the appellate Court where the trial Court has refused than where it has granted a new trial. 16 Am. & Eng. Encyc. of Law, 519, and cases cited. However the authorities in other jurisdictions may stand on this question, we find nothing in our statutes denying the right of a party to take exception to this Court from either the denial or the granting of a motion for a new trial. This practice has obtained for some years in this country, and the recent Act to reorganize the Judiciary, making this Court purely one of appellate jurisdiction, now removes us from the delicate position suggested, of the Court reviewing the opinions of another member of the same Court respecting the evidence in a jury trial. There being nothing in our statutes or our own precedents denying this right of exception, we prefer to continue the practice whether, as in this case, the question of law raised by the exception is the sufficiency of the evidence, or when the trial Court has directed a verdict upon its view of the evidence.

It is urged upon us that the possession set up in the defendant's evidence does not have all the ingredients essential to establishing a title by prescription. No one can doubt, in view of a long series of decisions in this Court, that mere possession for twenty years is insufficient to establish

this defense. The possession must be adverse, hostile, exclusive, notorious and continuous. It is claimed that the evidence of defendant does not show that her possession was hostile or notorious or continuous. Following is the evidence on this point:

After Kapu's death Mrs. Holt had control of that lot; I know that because after the death of Kapu Mrs. Holt put us people on there, the people who brought her son Owen up and some people who brought up her son Christopher; she put them on the land there, that is why I say she had control of it. After that she leased the lands, and continued leasing them until the present time. From the time of Kapu's death, I have never known of Kawai or any one else claiming the land; if I had known anything of that kind I would not have concealed it; I would have told her about it. I live right on the next lot; my lot is on the Waikiki side; the lot I now own is part of the original Kekuhaupio lot. The lot I own now was bought from Kapu; I bought it from Kapu. I am not aware that I am related to Mrs. Holt at all. I know a person named Keolo, she lived there; this woman Keolo was living there under Mrs. Holt. Most of this lot was leased or let out, excepting a small portion that Mrs. Holt reserved for Keolo, next tö her lot. Mrs. Holt collected the rents from the tenants that were on these lands. (Kapahu's testimony).

After the death of Kapu, Mrs. Holt had charge and control of the land. The land was put under her control and charge in 1868 by Kapu; Kapu told me so himself. After his death Mrs. Holt had charge of the land; Mrs. Holt put some relations there, a man by the name of Kane and Hoomana, and they brought up some of her children, Owen and Christopher, and Mrs. Holt has had the land in possession ever since. (Pua's testimony).

After Kapu's death Mrs. Holt had the land; the reason I say that is, Mrs. Holt and all her relatives or family that formerly lived here at Mililani, (because the government had formally taken possession of the place) they had no place to

live; she put them over on Kapu's lot. Kapu's place was right in sight from where I live; Mrs. Holt has had the lot in her possession ever since the death of Kapu. This is the real truth I'm telling now. I am not related to Mrs. Holt at all. (Maiohao's testimony).

I remember Kapu's death; after the death of Kapu Mrs. Holt had possession of this land and we lived there under her. Keolo went there to live under Kane; she was living there afterwards under Mrs. Holt. (Kahue's testimony).

I know Mrs. Holt, I know Keolo, she lived on the land in question; she is living there under Mrs. Holt, that is, she always told me so. I am living there on the land now; Keolo is not here. I am living there as a tenant of Mrs. Holt's, under lease. (Mrs. Burns' testimony.)

Kapu is now dead; after his death Mrs. Holt had possession of the land; she has had possession of the land ever since his death. I don't know that anybody has been in possession of the land who were opposed to Mrs. Holt. I know that some of Mrs. Holt's children have been brought up there. I have lived there a long time, I don't know how long; I was born there at this place. (Luhea's testimony.)

I know when Kapu died. I keep a record of the births of my children; I made a record of Kapu's death too. He died on the night of Christmas Day, 1870. After the death of Kapu, I had posesssion of the land, and have had it ever since. The first I heard of any claim of Kawai was when I brought the suit for trial between myself and Keolo. (Mrs. Holt's testimony.)

It is clear from this evidence that the defendant entered this land openly and retained possession of it as the heir of Kapu upon his death, Christmas, 1870; and that Keolo entered the land under defendant. In March, 1892, a suit was brought by Mrs. Holt against Keolo, who set up title not in herself but in Kawai K. George, the present plaintiff. The verdict being adverse to her (Keolo) we do not think that this suit interrupted the running of the title by prescription. A fair inference from the testimony is that Keolo, disputing

Mrs. Holt's title, was after December 25, 1890, when the twenty years adverse possession by her had run. Mrs. Holt says that she has never heard of Kawai's claim until Keolo asserted it in Court in Mrs. Holt's suit. Moreover the land claimed in Mrs. Holt's suit against Keolo is only a small portion of the land now sought to be recovered by Kawai K. George, and therefore it cannot be claimed that Keolo's possession of this small part interrupted Mrs. Holt's possession of the rest of the land.

The defendant having been married during a portion of the time during which the statute of limitation is claimed to have run, counsel for plaintiff asks how a married woman could obtain for herself a prescriptive title, seeing that a married woman's possession is in law the possession of her husband. We think that the more correct statement would be that the possession of a husband of land claimed by his wife is by virtue of the marital relation, and inures to the benefit of his wife. It was held in *Holton vs. Whitney*, 30 Vt., 405, that where a husband held possession of land not in his own right, but only because it belonged to his wife, and upon his death the wife took and continued possession and claimed the land as her own, the possession of her husband would inure to the benefit of the wife. But it would be otherwise if the land during the coverture was claimed and occupied by the husband as his own. As the Court said in *Sawyer vs. Kendall*, 10 Cush., 245, "There was no privity between herself (the wife) and her husband. He occupied it during his life, not by right of his wife, but by virtue of his own act of disseizin." We are not aware that a married woman's coverture, which is considered in law as a disablity, can be invoked against her. Such disability is considered as something she can invoke for her protection.

Counsel for plaintiff say that if the defendant held this land on the supposition that she was the grand-daughter and next of kin of Kapu, who died last seized, she did not intentionally hold adversely to the plaintiff as her occupancy was " by mistake." Now while it is true that the possession

must be under claim of title, it is not essential that there should be a rightful title. Tyler Eject., p. 861. "An invalid and defective title, if believed to be good, will be equally operative with a valid one in giving effect to a possession taken and held under it." Id. 863. And some hold that it is not requisite to adverse possession that there should even be *bona fides*. Id. 865.

No offer to contradict the evidence of adverse possession having been made by plaintiff, the jury were not at liberty to disregard it, and they must have done so through misadvertence or prejudice. It is possible that as the contest between the parties was mainly directed to the question of their relationship to Kapu, the jury overlooked the defense of adverse possession. We consider that this is a case requiring the interference of the Court, and therefore sustain the exceptions and order a new trial.

*A. S. Hartwell*, for plaintiff.

*A. Rosa* and *C. W. Ashford*, for defendant.