HENRY *v.* HENRY.

1. TRIAL—INSTRUCTIONS—COURT'S OPINION OF MERITS.

    For the trial judge to give an instruction which, standing alone, might be taken as an indication of his opinion of the merits of the controversy, but which, in connection with the testimony and the remainder of the charge, is not calculated to be so understood by the jury, does not warrant a reversal.

2. ADVERSE POSSESSION—FARM—TIMBER LAND—EXTENT OF OCCUPANCY.

    It is not essential to adverse possession of farm land that the entire farm, including timber lands, be cleared and cultivated, but it is sufficient if it is all held as one farm, and such use is made of the whole as farmers are accustomed to make of land of the character of that in question.

Error to Sanilac; Beach, J. Submitted October 25, 1899. Decided November 14, 1899.

Ejectment by Ida M. Henry against John Henry and others. From a judgment for defendants, plaintiff brings error. Affirmed.

*C. F. Gates*, for appellant.

*J. S. Crandell*, for appellees.

MOORE, J. The plaintiff is the owner of the record title to the S. W. ¼ of section 30. The defendant John Henry is the owner of the record title to the W. ½ of the S. E. ¼ of said section. As we understand the record, the other defendants are tenants of John Henry. This action was commenced April 15, 1897. The dispute arises over the line between these two descriptions of land. It is the claim of the plaintiff that defendants withhold from her a strip of land the entire length of defendants' farm, 12 rods wide, which plaintiff owns. To recover that strip of land, she has brought this action in ejectment. The case was

tried by a jury, who rendered a verdict in favor of the
defendants. From the judgment entered upon said ver-
dict, the plaintiff brings the case here by writ of error.

It is claimed by plaintiff that, though section 30 pur-
ports to be a full section, the government surveyors made
a mistake in running the section lines east and west, and,
instead of making them a mile long, as they should have
done, made them nearly 24 rods less than a mile. It is
her claim the south quarter post of the section, instead of
being 160 rods west of the southeast corner of the section,
should be but a trifle more than 148 rods west of the
southeast corner. It is the claim of the defendant Henry
that, when the land was surveyed, the quarter posts of
said section were placed a half mile west of the east line of
said section. This claim was controverted by the plain-
tiff, who contended they had either never been set or had
been lost. It was also the claim of the defendant Henry
that as early as in 1880 he cleared his land as far west as
the quarter post, and made a log and brush fence upon the
quarter line between his land and that of the plaintiff,
which fence remained until destroyed by fire, in 1881; and
that another fence was built upon the same line, which
was destroyed by fire a little later, but was rebuilt. He
contends that, for more than 15 years before the com-
mencement of the suit, his clearing extended back about
80 rods to the quarter line, with a fence between his lands
and the land of the plaintiff; and, as to the north portion
of his farm, he claims it was timber land used in connec-
tion with the rest of his farm, he cutting timber there-
from according to his needs, and using it for pasture.
He also contends that the father of the plaintiff used the
land west of the fence as a farm, each claiming to be the
owner of all the land occupied by each. He also claims
that the father of plaintiff, from whom she derived title,
who died shortly before this suit was brought, occupied
only up to the quarter post and the fence before described,
and acquiesced in the occupancy of the defendant, as
before stated. These claims of the defendant were dis

puted by the plaintiff, and the parties offered testimony tending to show the truth of their respective claims.

The plaintiff now says there was no testimony to show defendant Henry had been in possession, up to what he claims was the quarter line, for 15 years, and the court should not have submitted that question to the jury. We cannot agree with the counsel. While it was a controverted question, there is a good deal of testimony tending to show the claim of defendant to be true, and it was a proper question for the jury. *Whitford* v. *Crooks*, 54 Mich. 261; *McCall* v. *Wells*, 55 Mich. 171.

Most of the questions argued have been settled by repeated decisions of this court growing out of disputes about boundary lines, and it is not necessary to go over them again here. The plaintiff strenuously insists that the court prejudiced her case by indicating his opinion of the merits of the controversy by that portion of his charge reading as follows:

"Now, gentlemen of the jury, you may take this case under these instructions, and determine these questions as to who is entitled to the land in question,—whether Mr. Henry is to be disturbed in his possession, and is to surrender 12 acres of land on the east side of the line, or not."

Standing alone, this language would form some basis for the claim of counsel, but it must be taken in connection with the testimony and the rest of the charge. The testimony all showed that, as to the front portion of the farms, there had been a fence between the two farms for some years,—how long was a matter of dispute,—which was spoken of by the witnesses as the line between them. It was the claim of the plaintiff that she was entitled to 12 acres east of that line. As before stated, this claim was disputed by defendants. After stating the respective claims, and the law applicable thereto, at length and fairly, the court used the following language:

"Now, gentlemen of the jury, you may take this case under these instructions, and determine these questions as

to who is entitled to the land in question,—whether Mr. Henry is to be disturbed in his possession, and is to surrender 12 acres of land on the east side of the line, or not. If you find that he is, then there is another question to be determined, and that is, under the testimony here, as to the improvements which have been made: *First.* To what extent have the improvements and buildings increased the present value of the land over what would have been the value if it was left alone? *Second.* What would be the present value of the land—the premises—without the buildings and the improvements, and any waste, if any, which has been committed; that is, what would be the value of the land today if no improvements were made or buildings erected, and the land had remained without waste and without any improvements? Now, those two questions, if you shall find for the plaintiff, are to be answered in your verdict: *First.* To what extent have the improvements increased the value of the land? *Second.* What would be the present value of the land without improvements?"

It is very evident the court had no thought of indicating to the jury his impression of the merits of the case. The counsel evidently had no such thought at that time, for the record does not disclose that they indicated to the court his language might mislead the jury, and requested him to correct it. When taken in connection with the rest of the charge and the evidence in the case, it is clear the jury were not misled by it.

Counsel for plaintiff asked the court to charge "that adverse possession, so far as the boundary is concerned, does not extend beyond the ground actually occupied." The judge told the jury that it appeared from the evidence the clearing is not extended the whole length of the half mile between the parties, and that occupancy need not be to the extent that the ground is actually cleared and cultivated, but it would be sufficient if it is within one description, and has been occupied for any purposes connected with ordinary farm usage. Counsel says this was error. In *Murray* v. *Hudson*, 65 Mich., at page 674, it is said:

"If Bryce entered upon this land under his deed from

Kitten, and used it thereafter as a wood lot appurtenant to his farm in the usual and ordinary way, and exercised such acts of ownership over it as were necessary to enjoy such usual and ordinary use of a wood lot, such acts, being continued and uninterrupted, would amount to actual possession, and such possession, being under color of title and a claim of right, and exclusive, held so openly and notoriously that the community understood and recognized his claim of ownership, would be adverse."

In this case it was the claim of defendant Henry that, when he took possession of the land, it came within the description of his deed, that he occupied all of it as one farm, and the timber land was occupied as any farmer would occupy his timber land. The case comes within *Murray* v. *Hudson, supra.* See, also, *Sparrow* v. *Hovey,* 44 Mich. 64; *Curtis* v. *Campbell,* 54 Mich. 340; *Cook* v. *Clinton,* 64 Mich. 309 (8 Am. St. Rep. 816); *Sauers* v. *Giddings,* 90 Mich. 50.

Judgment is affirmed.

The other Justices concurred.