# CASES DECIDED

·BY THE

# SUPREME COURT

## OF THE

## TERRITORY OF HAWAII

---

WAIANAE COMPANY, AN HAWAIIAN CORPO-
RATION *v.* KAIWILEI.

## No. 1010

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.
HON. C. W. ASHFORD, JUDGE.

ARGUED JUNE 25, 1917.                    DECIDED AUGUST 1, 1917.

ROBERTSON, C.J., QUARLES AND COKE, JJ.

TRIAL—*decision of court in civil cases, jury-waived.*

In the trial of civil cases, where a trial by jury has been waived, the court shall hear and determine the case both as to the facts and the law and its decision shall be rendered in writing stating its reasons therefor.

ADVERSE POSSESSION—*when once commenced will not be checked by a conveyance to minors.*

If the ancestor or grantor of two minor children was living at the time the statute of limitations had commenced to run in favor of a third person the disabilities through non-age of his grantees could not check or impede the running of the statute.

SAME—*same.*

An adverse possession which began during the life of the ancestor or grantor will continue as against the infant heirs or grantees.

Opinion of the Court.

SAME—*effect of.*

> By adverse possession of land for the statutory period of limi-
> tation the adverse holder acquires a title in fee simple which is
> as perfect as a title by deed. Its legal effect is not only to bar
> the remedy of the owner of the paper title but to divest his estate
> and vest it in the party holding adversely for the required period
> of time.

SAME—*continuity of not destroyed by deed to minors residing on prop-*
*erty.*

> Where the statute of limitations had commenced to run in favor
> of defendant the subsequent delivery of a deed of the property by
> the holder of the paper title thereto, to two minor children of de-
> fendant who were then living with defendant upon the property,
> would not destroy the continuity of defendant's possession nor
> have the effect of tolling the bar of the statute.

SAME—*claim of title.*

> While it is true that the possession must be under claim of title
> it is not essential that there should be a rightful title. An invalid
> and defective title, if believed to be good, should be equally as
> operative as a valid one in giving effect to a possession taken and
> held under it.

OPINION OF THE COURT BY COKE, J.

In the year 1875, Hulupii, the patentee of a tract of
land situated at Waianae, Island of Oahu, containing
about 4.27 acres, by deed transferred the land to Papiano
(k) and Kamaka (w), husband and wife. This tract of
land is for all intents and purposes composed of two lots.
The lower or makai lot is joined to the upper or mauka
lot by a short connecting strip about eight feet in width.
For the purposes of this opinion the land will be con-
sidered as two separate lots and referred to as the makai
lot and the mauka lot as the context shall require. Some
time prior to April 15, 1889, Kamaka died leaving her
husband Papiano and her parents Kaulehua and Mahiai
surviving her. On that date the last named parties at-
tempted to partition or divide the land between them and

a deed for this purpose was made by Papiano who transferred the mauka lot to Mahiai and Kaulehua, and on the same day Mahiai executed a deed transferring to Papiano the makai lot. Kaulehua did not sign the deed to Papiano by reason of the fact that he had become suddenly insane, dying shortly thereafter. On the same day, to wit, April 15, 1889, Mahiai deeded all her interest in the land to the defendant herein, Kaiwilei, who was the foster child of Kamaka, and who, after the death of Kamaka, was reared to womanhood by Mahiai. It appears from the evidence taken in the case that in 1884 all of the parties above mentioned were living on the makai lot, but that at that time certain differences arose between Mahiai and her daughter Kamaka and her son-in-law Papiano and a man by the name of Po, then living with Papiano and Kamaka; that Mahiai at that time expelled these parties from the makai lot and they proceeded to move to the mauka lot, at which place a house was built, and there they continued to live. Mahiai and her husband and the defendant herein, Kaiwilei, who was then a very young girl, continued to live on the makai lot. In 1887 the defendant Kaiwilei was married to a man named Pililaau and they continued to make their home on the makai lot together with Mahiai. The first children born to Pililaau and Kaiwilei were two daughters named Papaenaena and Kamaka (opio). While these two children were mere infants and living with their parents on the makai lot, in the year 1891, Papiano transferred all his interest in the land of Hulupii to them. While Papaenaena was still a very young girl she was taken by relatives to reside at Laie, Oahu, where she remained most of the time until her marriage. Kamaka remained with her parents until she was married, at which time she and her husband moved to the mauka lot where they thereafter resided. In 1914 Papaenaena and her husband sold their interests in the land of

Hulupii to the Waianae Company, the plaintiff herein, and in March, 1915, Kamaka and her husband executed an exchange deed with the plaintiff whereby the plaintiff acquired all the interests of Kamaka and her husband in the makai lot and in turn transferred to Kamaka the interest of plaintiff in the mauka lot. The defendant Kaiwilei still being in possession of the makai lot the plaintiff in 1915 instituted an action against the defendant Kaiwilei to quiet title to the makai lot which plaintiff claimed by reason of the said conveyances from Papaenaena and Kamaka and their respective husbands. The defendant gave notice in her answer of her intention to rely upon the statute of limitations and title by adverse possession, and upon the trial of the cause her sole defense was based upon these grounds. It is the contention of the defendant that when the division of the land of Hulupii was made between Papiano, on the one hand, and Mahiai and Kaulehua, on the other, that it was the intention of the parties that Papiano should take the mauka lot, where he then lived, and that Mahiai and Kaulehua should take the makai lot, upon which they lived at the time, although by a mistake the deeds, at that time executed, had the reverse effect.

There is a very sharp conflict between the evidence introduced by the plaintiff and that of the witnesses for the defense. The defendant Kaiwilei, in her own behalf, testified that from childhood she lived with Mahiai on the makai lot; that she was present in 1884 when Mahiai expelled Papiano, Kamaka and Po from the makai lot and that these parties then went to live and did live on the mauka lot and both Papiano and Kamaka died while residing mauka; that in 1889, while Mahiai and defendant were still living on the makai lot, Mahiai deeded this lot to defendant, at that time saying, "This is your piece of land," referring to the makai lot. In a very short time Mahiai died and the defendant continued to occupy the premises,

cultivating and claiming the same as her own; that she has so possessed and occupied the property from the year 1889 to the present date; that all of her children, to wit, fifteen in number, were born on the makai lot, and that her possession and dominion over the lot has been uninterrupted. Her testimony is corroborated by a considerable number of witnesses.

On the other hand the plaintiff has introduced a vast amount of testimony tending to show that the defendant had lived on the mauka lot almost exclusively up to the year 1912, at which time, it is admitted, she went into possession of the lower lot.

The trial court, sitting without a jury, and after the close of the case, rendered a decision sustaining defendant's claim to title by adverse possession and judgment for the defendant was thereafter entered. The plaintiff comes to this court on a bill of exceptions.

Slight material assistance is afforded this court by the decision of the trial court on account of its failure to more fully comply with the provisions of section 2380 R. L., which requires that in the trial of a cause of this nature, where a jury has been waived, the court shall hear and decide the cause both as to the facts and the law and its decision shall be rendered in writing stating its *reasons* therefor. Nothing is contained in the decision of the trial court except the bare statement that "Plaintiff has the paper title. Defendant claims by adverse possession. The evidence, although conflicting, sustains this claim. Judgment for defendant." It is regrettable, and in a measure surprising, that the trial court failed to more liberally comply with the mandate of the statute, especially in view of the frequency with which this court has been compelled to call attention, in language it would seem impossible to misunderstand, to the statutory provision on

the subject. See *Kahai* v. *Yee Yap,* 20 Haw. 192; also *Yoshiura* v. *Saranaka,* 23 Haw. 761.

A single serious question of law is presented for our consideration by the record in this case, namely, did the execution and delivery of the deed to the property in question by Papiano to the two minor children of defendant, then living on the property with the defendant, toll the adverse claim of defendant and thereby interrupt the continuity of her possession in the face of the fact that two years prior thereto the defendant had taken possession of the property, occupied and claimed the same as her own? From the very fact that a minor is under disability to protect his own rights the statutes of the Territory give him protection beyond that afforded the adult. If the right of entry or of action shall accrue to a minor he shall have within five years after reaching his majority to enter or bring action. But in the case at bar the statute of limitations had commenced to run in favor of defendant long prior to the deed of Papiano to Papaenaena and Kamaka. If the ancestor or grantor of the two minor children was living when the adverse possession began the disabilities through non-age of his grantees could not check or impede the running of the statute. See *Armstrong* v. *Wilcox,* 49 So. 41, 42. An adverse possession which began during the life of the ancestor will continue as against the infant heirs. See 1 R. C. L. 759. A possession adversely commenced is presumed to continue adversely so long as maintained. See *Kalakaua, et al.,* v. *Keaweamahi, et al.,* 4 Haw. 571, 576.

"Where the statute of limitations has once commenced to run no subsequent disabilities can check or impede it." *Doyle* v. *Wade,* 11 Am. St. Rep. 334, and many authorities cited in the footnotes.

The whole doctrine of prescription is founded upon public policy. It is a matter of public interest that title

to property should not long remain uncertain and in dispute. The doctrine of prescription conduces in that respect to the interest of society, and at the same time is promotive of private justice, putting an end to and fixing a limit to contention and strife. Protests and mere denials of right are evidence that the right is in dispute and distinguished from a contested title. If such protests and denials, unaccompanied by an act which in law amounts to a disturbance and is actionable as such, be permitted to put a right in abeyance the policy of the law will be defeated and prescriptive rights will be placed upon the most unstable of foundations.

By adverse possession of land for the statutory period of limitation the adverse holder acquires a title in fee simple which is as perfect as a title by deed. Its legal effect is not only to bar the remedy of the owner of the paper title but to divest his estate and vest it in the party holding adversely for the required period of time. See *Leialoha* v. *Wolter*, 21 Haw. 624, 630.

It has been urged by counsel for the plaintiff that the deed of Mahiai to the defendant herein was a nullity by reason of the fact that the same was not joined in by Kaulehua, the husband of Mahiai, and that defendant could not claim the property under an invalid title. This contention has been refuted in other jurisdictions as well as in Hawaii.

"While it is true that the possession must be under claim of title it is not essential that there should be a rightful title. An invalid and defective title, if believed to be good, will be equally operative with a valid one in giving effect to a possession taken and held under it." *George* v. *Holt*, 9 Haw. 135, 139, 140.

There is evidence that defendant's husband, Pililaau, was in the year 1901 appointed guardian of the persons and estates of the minor children, Papaenaena and Kamaka, and that for some years the taxes on the property

were paid by Pililaau and charged against the account of the minors, but there is nothing in the record to show any overt act of dominion over or claim to the property in dispute, either by Pililaau as guardian of the children or by the children themselves either before or after their majority, which would in any wise bring home to the defendant notice that Papaenaena and Kamaka, or either of them, claimed the makai lot or any interest therein. We know of no precedent for holding that the mere fact that a deed was executed by Papiano to the minor children of defendant, while the children were living with the defendant upon the land in dispute and long after the adverse possession of defendant had commenced to run, would have the effect of arresting the running of the statute. The evidence was in sharp conflict but the trial court, sitting in lieu of a jury, was clothed with authority to hear and weigh the evidence, and while a greater number of witnesses testified for the plaintiff than for the defendant the trial court believed the testimony of defendant's witnesses and the decision cannot be disturbed for that reason. In all cases where the defense of adverse possession is interposed the character of the possession is a question for the jury. See 1 R. C. L. p. 757. The evidence of the witnesses for the defense in this case is to the effect that the defendant took the property from Mahiai, from whom she claims to have deraigned title, in 1889, two years prior to the date of the deed to the children. The defendant has possessed and claimed the property ever since and the statute of limitations has been running in her favor. We hold that the mere delivery of the deed to the children did not destroy the continuity of defendant's possession nor have the effect of tolling the bar of the statute.

All additional questions raised by plaintiff's exceptions have been duly considered and are found without merit sufficient to warrant a reversal of the trial court.

Plaintiff's exceptions are overruled.

Robertson, C.J., concurring.

*W. L. Stanley* and *C. H. Olson* (*Holmes & Olson* and *P. R. Bartlett* with them on the brief) for plaintiff.

*N. W. Aluli* (*E. K. Aiu* with him on the brief) for defendant.

### CONCURRING OPINION OF ROBERTSON, C.J.

If the appellant had raised and urged the point that the decision of the circuit court was erroneous on the ground that the reasons for its conclusion were not set forth as required by section 2380 of the Revised Laws I think it should have been sustained, but as the point has been waived this court must proceed on the assumption that all disputed facts were decided by the court below in favor of the defendant. But on behalf of the plaintiff it is contended that taking all disputed facts as resolved against the plaintiff it still remains that as matter of law title in the defendant by adverse possession was not established because it appears by undisputed testimony that the possession of the defendant was lacking in the essential element of exclusiveness as the defendant's two minor children to whom the legal title to the land in dispute was conveyed in 1891 lived on the land in joint occupancy with their mother, and as to the daughter, Papaenaena, who, while still a minor, went elsewhere to reside, her possession was maintained by her father, Pililaau, who was appointed the legal guardian of her property (as well as of her sister's) and who continued in joint occupancy of the premises with his wife, the defendant. The question of adverse possession is usually a mixed one of law and fact, but where, as here, the point is as to the sufficiency of admitted or undisputed facts to prove the title claimed, it is a question of law. *Kaaihue* v. *Crabbe,* 3 Haw. 768, 774; 2 C. J. 279, *et seq.*

It is elementary that in order that an adverse posses-

sion may ripen into title it must, among other things, have been exclusive and uninterrupted for the statutory period. There was evidence to support the defendant's contention that the deeds from Papiano to Mahiai and Kaulehua, and from Mahiai to herself, both dated April 15, 1889, were intended to convey the makai portion of the kuleana; and that ever since the date of her deed the defendant had occupied the makai lot under claim of title in herself. Under that theory the statute of limitations began to run from the date of the deed, and a right of action at once accrued to Papiano. In 1891, Papiano, on his death bed, executed the deed conveying the legal title to the makai lot to the two children who were living there with their mother. Was the mother's adverse possession thereby interrupted or its exclusiveness destroyed? In order to have either effect there must have been a claim of title and exercise of dominion, but the infants were incapable of asserting such on their own behalf or of understanding their rights in the premises. It may seem as though the law ought to protect them in their helplessness but the rule is settled otherwise. The rule that "when the statute once begins to run it will continue unless there is a saving qualification in the statute" (25 Cyc. 1267), applies to actions for the recovery of land as well as to personal actions. *Wire v. Waialua Agr. Co.* 18 Haw. 662. In that case the owner of land had died disseised leaving minor heirs, and the contention was advanced that the heirs had five years after reaching majority in which to bring action. This court held that the statute continued to run notwithstanding that the heirs were minors. The principle applies here. The two children (plaintiff's grantors) became of age respectively on January 12, 1906, and March 29, 1907. This action was commenced on April 9, 1915, and the contention is that the statute cannot be regarded as having commenced to run before the children had respectively

reached majority, and that the full period of ten years thereafter was available. That view cannot be sustained. The defendant's adverse possession commenced to run on April 15, 1889, and ripened into title ten years thereafter and about two years before Pililaau was appointed guardian of the children. Section 2654 of the Revised Laws, providing that "If, when such right of entry or of action shall first accrue as aforesaid, the person entitled to such entry or action shall be within the age of twenty years * * * such person, or any one claiming from, by or under him, may make the entry or bring the action at any time within five years after such disability shall be removed, notwithstanding the ten years before limited in that behalf, shall have expired," does not apply because at the time the right of action accrued the owner of the legal title was under no disability. Nor, I think, does the general rule that the possession by a parent of his child's land will not be deemed adverse to the child (2 C. J. 156), relied on by the appellant, apply to a case where the statute has already begun to run against the child's predecessor in title.