HANNAH HAILI THOMAS, et al., Plaintiffs-Appellees, *v.* STATE OF HAWAII, et al., Defendants, and JENNIE T. SEBASTIAN and MARVIN H. FUKUMITSU, Defendants-Appellants

No. 5272

September 28, 1973

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON AND KOBAYASHI, JJ.

OPINION OF THE COURT BY ABE, J.

The plaintiffs on March 19, 1968 commenced this action to quiet title to eight parcels of land and named numerous defendants. This appeal, however, concerns the parcel of land designated as LCA 2997:2 to Nakanelua, and also Tax Key 4-9-03-3.

As to this parcel of land the defendants-appellants, Jennie T. Sebastian and Marvin H. Fukumitsu, filed a counter-claim

and cross-complaint claiming title to same by adverse possession. After trial, the jury returned a verdict for the plaintiffs, and the appellants appealed from the judgment entered by the trial court pursuant to the verdict.

An aerial photograph taken on October 29, 1949 by R. M. Towill Corporation for the Road Department of the Territory of Hawaii was introduced in evidence as Defendant's Exhibit B-3. The photograph taken in connection with an aerial engineering survey of lands around Molii Pond showed the subject land. In connection with Exhibit B-3,[1] witness Dennis Teranishi identified buildings or shacks on the subject premises. Also, appellant Jennie T. Sebastian testified that shortly after her marriage in 1941, her husband erected a lumber or wood shed, a tool shed, and a garage, and that they have continuously used the buildings from 1941 to date of her testimony.[2] Then plaintiff Hannah Thomas testified that she saw structures on the subject land prior to 1963, probably between 1960 and 1961. Further, David K. Baptiste, a witness called by the plaintiffs, testified that he drove upon subject premises from 1950 to 1958, to show tourists carps on the appellants' land and that he noticed a garage and small sheds on the subject premises.

The appellants by overwhelming evidence have shown the use of the subject land by the appellants to store automobiles, firewood, tools, etc. The appellants also testified that the parcel of land in question was put to such use under claim of title by them and their predecessors in interest. On the other hand, the plaintiffs have not only failed to controvert such use of the premises by the appellants but also confirmed such use.[3] Also, though the plaintiffs attempted to show that such use of the premises (construction of the garage and sheds and their use) by the appellants and their predecessors in interest

---

[1]According to a Chinese proverb: One picture is worth more than 10,000 words.

[2]The testimonies of the appellants Marvin Fukumitsu and his wife Victoria Fukumitsu were substantially the same.

[3]Also, the record shows that it was not until June 1966, that Hannah Thomas, one of the plaintiffs, asserted title to the subject land. This assertion made to Victoria Fukumitsu, wife of one of the appellants, led to an argument and fight between the two of them.

was a permissive use they failed to do so.[4] Thus, it must be deemed that the appellants and their predecessor in interest have continuously and adversely used the premises for more than ten years.

It should also be noted that the court also admitted into evidence Defendant's Exhibit J-2, a lease executed by Kaialau to Lee Kin purporting to lease subject land and another parcel. The appellants testified that, based on this document, they and their predecessor in interest claimed title to, or ownership of, the premises. This factor sufficiently shows that the appellants were in possession of the premises claiming ownership under a color of title. "While it is true that the possession must be under claim of title it is not essential that there should be a rightful title. An invalid and defective title, if believed to be good, will be equally operative with a valid one in giving effect to a possession taken and held under it." *Waianae Co. v. Kaiwilei,* 24 Haw. 1, 7 (1917), quoting *George v. Holt,* 9 Haw. 135, 139-40 (1893).

It is correct that the jury is the trier of facts. However, under the record of this case there was no factual controversy on the issue of adverse possession. As above stated, the appellants showed by overwhelming evidence the adverse use of the premises, and the plaintiffs and their witnesses not only failed to controvert, but also confirmed such use.[5] Thus,

---

[4]There is no iota of evidence to show that the plaintiffs or their predecessor in interest had given the appellants or their predecessor in interest permission or license to use the premises for the purpose put to. We find that the very weak statement contained in the deposition of Charles Baptiste that the premises could be used for a right of way is not sufficient to make the appellants' adverse use of the premises for other purposes a permissive use. The deposition reads in part:

Q Now, the place she moved to, did it have any way to get to Johnson Road, the place where she moved to, the place that Harriet Nawahine moved to?

A Well, she have no place to get to Johnson Road.

Q I see. Did she ever talk to you about not having a way to get there? Did she ever talk to you and your wife, in your presence, about not having a way to get to Johnson Road?

A Yes.

Q What did she say?

A She asked me and my wife if they want us to let them use the property for going out. We told her, if you clean the property, keep it up, it's all O.K.

[5]Of course, we reaffirm the rule adopted in *Territory v. Pai-a,* 34 Haw. 722, 726

the judge should have directed a verdict that the appellants have proven adverse possession of the premises for the statutory period and that they had acquired title to the premises by adverse possession. Or, having failed to direct a verdict, the judge should have entered a judgment for the appellants notwithstanding the verdict.

As we said in *Deponte v. Ulupalakua Ranch*, 48 Haw. 17, 21, 395 P.2d 273, 275 (1964):

> Ordinarily it is within the province of the jury to determine from conflicting or doubtful evidence the existence of facts necessary to constitute adverse possession, but where, as in this case, the evidence as to the facts necessary to constitute such possession for the statutory period is clear and undisputed and susceptible of but one inference, it becomes one of law for the court.

Also we said in *Lucas v. Liggett & Myers Tobacco Co.*, 50 Haw. 477, 482, 442 P.2d 460, 464 (1968):

> where evidence . . . is undisputed, as in this case, the determination of the matter is not within the province of the jury but is a question of law for the court.

Thus, we hold that the use of the premises was hostile and adverse to the owner's title; that the appellants and "their predecessor in interest have been in actual, open, hostile, notorious, continuous, and exclusive possession of the land in question for the statutory period" under a color of title (*Gomes v. Upchurch*, 50 Haw. 125, 127, 432 P.2d 890, 892 (1967), *see also Deponte v. Ulupalakua Ranch*, 48 Haw. 17, 395 P.2d 273 (1964)); and that they have proven title to the premises by adverse possession.

Reversed.

*Helen B. Ryan* (*Ryan & Ryan* of counsel) for defendants-appellants.

*Donald E. Scearce* (*Cades Schutte Fleming & Wright* of counsel) for plaintiffs-appellees.

---

(1938), that "[a]dverse possession is to be taken strictly, and every presumption is in favor of a possession in subordination to the rightful owner. Title by adverse possession, therefore, must be established by clear and positive proof." But even given this presumption and the strict standard of proof, defendants have clearly proven their case for adverse use.