His Majesty Kalakaua *et al. v.* G. W. Keaweamahi *et al.*

## SUPREME COURT—IN BANCO.

### JANUARY TERM—1883.

*Judd, C. J., McCully and Austin, J.J.*

HIS MAJESTY KALAKAUA AND HER MAJESTY KAPIOLANI *vs.* G. W. KEAWEAMAHI ET AL.

#### HEARD BY FULL COURT BY CONSENT.

THE PLAINTIFFS claim in ejectment. The defense is the Statute of Limitations.

The facts show that W. L. Moehonua and the defendants, his heirs, have been in possession claiming title over thirty years. It appeared that Moehonua's wife owned the land claimed by the plaintiffs at her death in 1849, and that Moehonua was then in possession of it and claimed as her heir, and by verbal will from her. He was appointed administrator of his wife's estate on March 13, 1852, and was never discharged;

HELD, that as such administrator he was not thereby a trustee for the plaintiffs and their privies, so that the Statute of Limitations did not run as to them; also

HELD, that the defense of the Statute of Limitations was fully made out.

Opinion of the Court by AUSTIN, J.

A jury was waived in this case, and it came before us in the first instance by consent in vacation, upon an agreed statement of fact.

It is an action of ejectment to recover the possession of certain land situate at Puulena, Manoa, District of Kona, in the Island of Oahu, described in Royal Patent 7,263, on Land Commission Award 6,450 to Kaunuohua, w.

The plaintiffs claim to recover, for Her Majesty Kapiolani, as grantee of the lineal descendant of the heir of Kaunuohua. The defense is a general denial, and the Statute of Limitations. The agreed statement of facts is as follows:

His Majesty Kalakaua *et al. v.* G. W. Keaweamahi *et al.*

" The premises named in plaintiffs' complaint were awarded by Land Commission Award No. 6,450 to Kaunuohua, w.; that said Kaunuohua died in the year 1849 without issue, leaving her surviving husband W. L. Moehonua; that said Moehonua took out letters of administration upon the estate of said Kaunuohua, March 13, 1852; that said Moehonua died in the year 1878 never having filed any accounts as such administrator, and never having been discharged from said trust; that said defendants are the heirs at law of said Moehonua, and are in possession of said premises; that Kahana-auwai Kanoa, w., is the nearest blood relative of said Kaunu-ohua now living; Kiwai was the father of Kaunuohua, Keku-ialono was the mother of Kaunuohua: Kiwai by Heleino had a daughter, Kenoa, who was the mother of Kamahiai, w., who was the mother of Kahanaauwai Kanoa; that the plaintiff, Kapiolani, has purchased said premises from said Kahana-auwai Kanoa, and now holds all the title of the latter thereto.

"It is admitted Kanoa was living in Honolulu when Kaunu-ohua died. It is also agreed by and between the parties to this submission, and admitted that the record and proceed-ings in the Probate Court, in the matter of the estate of Ka-unuohua, w., of March 13, A. D. 1852, and also the record in the estate of Moehonua, more especially the claim of His Majesty Kalakaua, filed May 9, 1882, and proceedings there-under in said record, and the record and proceedings in the two suits in ejectment, wherein Kapiolani, Queen Consort, is plaintiff, and Keaweamahi *et al.* are defendants, filed respect-ively in March, A. D. 1881, and February, A. D. 1882, be made part of the record of submission for the consideration of the Court.

"It is also admitted that W. L. Moehonua was in posses-sion of the lands in dispute, forming the estate of Kaunuohua from the 13th of March, A. D. 1852, and that he and his heirs have continued in possession thereof to the present time, excepting the land of Kalia at Waikiki, of which plaintiffs

claim to have been in possession since the month of May, A. D. 1882."

From these facts we think it must be presumed that Her Majesty, the plaintiff, is the grantee of the lineal descendant of the lawful heir of Kaunuohua. The illegitimacy of her grantor or her ancestors is not to be assumed unless clearly proved, and there was no such proof.

The substantial question in the case is whether the defense of the Statute of Limitations is made out.

Under the agreed facts, it must be assumed after the marriage of W. L. Moehonua to Kaunuohua in 1848, that by force of the Statute of 1846 he took and held possession of the land claimed as her husband, and that he held possession thereof at the time of her death in 1878, and that thereafter his heirs held and now hold the possession thereof. If this possession after the death of Kaunuohua was adverse to the plaintiffs, their right of entry was long since tolled, and they cannot recover.

The plaintiff claims that, by virtue of the appointment of Moehonua as administrator of the real and personal estate of Kaunuohua his wife, he became a trustee for the plaintiffs and those under whom they claim, and that thereafter he remained their trustee till his death, and that, therefore, his possesssion of the land was never adverse to, but was in accordance with the plaintiffs' title.

It is a familiar principle that a trustee will not in general be held to take any larger estate than the nature of his trust requires.

See 2 Washburn on Real Property, p. 495.

If the administrator was such trustee, and was thereby entitled to the possession of the property in suit, it was only temporarily, and for the purpose of paying debts, and, subject to this duty the heir was entitled to immediate possession, and to the receipt of the rents and profits. If the heir were in possession at the death of the ancestor we feel sure that

the law would not allow the administrator to oust him from the possession except upon petition before the Probate Court, showing the necessity of selling the property to pay debts. In the proceedings in the Probate Court, in this case, no such petition was made, nor was any indebtedness shown ; and the proofs show that there was no personal property. W. L. Moehonua was in possession when he applied to be made administrator. What he then claimed to be the nature of his possession, and what trust he then intended to assume, are to be determined by what was then said and done.

The petition for administration, and the proofs in probate, are part of the *res gestae* in the case, and are as follows :

"HONOLULU, January 2, 1852.

"To the Hon. WM. L. LEE, Probate Judge : The undersigned hereby prays to administer (or settle) the estate, real and personal, of Kaunuohua, my wife, who has died in Honolulu, leaving no written will ; but, the day she died, she left by word of mouth in my presence, and in the presence of some other persons, all her property to which she had any right, to me her husband. This is what I ask of you.

"Respectfully,          W. L. MOEHONUA."

_____

"SUPERIOR COURT.—March 13, 1852.

"In the matter of the Estate of Kaunuohua. Before W. L. LEE, Chief Justice. Present : W. L. Lee, Haalelea, Moehonua, H. Rhodes, *et al.*

"Kapuu sworn, says : I knew Kaunuohua, the deceased ; she lived at the King's Palace; she is now dead; she died, I think, in 1849; she died of a 'mai maoli'—an internal disease; I was present, and saw her die; I lived with her a great many years ; she had a land (an ili) called Aipulena in Manoa Valley; she had entered a claim in Land Commission ; she had two ilis in Kalihi called Mokauea and Niihau 2 ; she entered claims for them ; the Ahupuaa of Kalaupapa, on Molokai ; she had no personal property but her clothes ; she

His Majesty Kalakaua *et al. v.* G. W. Keaweamahi *et al.*

had a little house lot in Lahaina, at Maui ; W. L. Moehonua was her husband ; she has no brothers or sisters or parents ; Moehonua is her heir, and no one disputes the property with him; there was a dispute with Alexander Liholiho about two house lots, but Moehonua has relinquished them; she made no will to my knowledge ; I did all her business, but never heard of her having made any will.

"A. Paki sworn, says : I knew Kaunuohua ; she is now dead; she lived in Honolulu sometimes with the King; she died sometime in 1849 ; Moehonua is her heir ; I have heard of no dispute to the property ; I have never heard of her having made any will except by word of mouth; the property is as stated by the former witness.

"No person appearing to oppose the application, the Court did order letters of administration to be issued to W. L. Moehonua without filing bonds.

" (Signed)           HENRY RHODES,
" Clerk Supreme Court.

"Letters of administration issued in usual form."

The petition was presented and considered February 15, 1852.

These papers are conclusive that he then claimed as heir of his wife.

Kapuu, the first witness in probate, swears that Kaunuohua has no brothers or sisters or parents ; that " Moehonua is her heir, and no one disputes the property with him."

This shows him to have been then in possession claiming as heir.

By the agreed facts, we are now bound to say that Kaunuohua then did have a sister living whose lineal descendant was the plaintiffs' grantor, but the above proofs show that Moehonua disputed that fact, and claimed to be owner of the whole in his own right.

The petition shows that Moehonua said that Kaunuohua, on the day of her death, made a verbal will in his favor.

Prior to the enactment of the organic laws of 1846 a verbal will might be made.

See Estate of L. H. Kaniu, 2d Haw. Rep., 82–84.

In that case a verbal will was established in favor of his present Majesty Kalakaua.

But we think that when Kaunuohua died a verbal will was no longer valid.

See Statute Laws, 1846, pp. 249-50, Section 1 ; Laws, 1847, p. 55, Section 3.

It is, however, evident that when Moehonua accepted the administration he was in possession, openly claiming to be heir of Kaunuohua, and to be entitled to the property in dispute, as owner, against all the world. This claim, and the petition and proofs then made, characterize and qualify his acceptance of letters of administration, and show that he was not trustee for the plaintiffs or their grantor, and that he never acknowledged the existence of any such relation.

The probate proceedings are matter of record. The sister of Kaunuohua, who was then living in Honolulu, and under no disability, must be presumed to have had notice of those proceedings, and of Moehonua's claim to the title. After a trustee denies a trust his possession is deemed adverse.

See Washburn on Real Property, Volume 2, p. 493 ; Perry on Trusts, Volume 2, Section 864. Moehonua not only denied the trust—he never admitted it ; and it may be properly inferred that he took the administration because he believed it would aid his claim of title as sole heir, and it was his assertion of it in Court. He expressly denied the title of all other heirs. An administration so taken cannot be construed into admission of other's rights.

A possession adversely commenced is presumed to continue adverse, so long as maintained. Bogardus *vs.* Trinity Church, 4 Sand. Ch., pp. 633, 733 ; 1 Greenleaf's Ev., Section 41.

When the administration was granted the possession of Moehonua was adverse. This condition continued, unless

His Majesty Kalakaua *et al. v.* G. W. Keaweamahi *et al.*

taking administration was abandonment of the character of the possession ; and we think we have shown that it was not. See Jackson *vs.* Sears, 10 John R., p. 435.

The circumstance that the title claimed was void, or commenced in fraud of the law, does not detract from adverse possession commenced under it. See Bogardus *vs.* Trinity Church, 4 Sand. Ch. R., p. 739 ; Harpending *vs.* The Reformed Protestant Dutch Church, 16 Peters R., p. 455.

Even though Moehonua claimed under a verbal will, or claimed as heir without any reason for it, his claim was none the less adverse on that account.

For these reasons we hold that an adverse possession of thirty years is made out, and that the defense of the Statute of Limitation is established.

Let judgment for the defendants be entered, with costs.

Hon. E. Preston and F. M. Hatch for plaintiffs.

J. M. Davidson for defendants.

Honolulu, January 12, 1883.