**Alvin E. SIMS et al., Appellants,**

**v.**

**Janice R. CAGE, Appellee.**

**No. 16463.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

May 15, 1975.

Rehearing Denied June 5, 1975.

Maurice Jewell Sims. Subsequent to filing of suit, Mrs. Cage obtained conveyances from Roma C. Stott and the Independent Executor of the Estate of Howard Meyer, deceased, and the cause proceeded to trial against the remaining defendants.

Mrs. Cage established a record title to the land in suit through mesne conveyances from Aaron Sims, who had conveyed a 29¾ acre rectangular tract of land, including the land in controversy, to his son, Mose Sims, by deed dated March 10, 1915. Subsequent to that conveyance, in 1919, Mose Sims conveyed the 29¾ acre tract to G. A. Singleton who later that year reconveyed to Mose Sims an approximate two acres of land out of the southwestern corner of the larger tract. The relative location of these tracts as shown on plaintiff's exhibit number 1, appears as follows:

Dale Harvill, Houston, for appellants.

James L. Robertson, Don R. Emerson, Houston, for appellee; Wheat, Thornton & Shaw, Jo E. Shaw, Jr., Houston, of counsel.

EVANS, Justice.

Appellee, Janice R. Cage, brought this trespass to try title action to recover possession and title to approximately 28 acres of land against defendants, Howard C. Meyer, Roma C. Stott and Sims Properties, Inc., a Texas corporation, Leverne Edward Sims, Annie G. Sims, Alvin E. Sims and

The land in controversy is located north of Atascocita Road, east of Lake Livingston, in Harris County, Texas.

The defendants claim ownership of the approximate two-acre tract as heirs of Mose Sims and his wife, Sarah Sims. It is undisputed that Mose Sims and those who claim under him, sometimes referred to as the Sims family, have at all material times occupied a house situated on the two-acre tract of land. The Sims family claimed no record ownership to the larger tract and based their claim upon the ten year statute of limitations, Article 5510, Vernon's Tex. Rev.Civ.Stat.Ann.

The issues submitted to the jury and their responses are as follows:

"Special Issue No. 1

"Do you find from a preponderance of the evidence that the Defendants, LEVERNE EDWARD SIMS, ANNIE G. SIMS, ALVIN E. SIMS and MAURICE JEWEL SIMS, or MOSE SIMS, asserted adverse possession, if any, between the year 1939 and April 17, 1970, to the property in controversy against the Plaintiff such as was and is of such unequivocal notoriety that Plaintiff would be presumed to have notice of such adverse possession?

"Answer 'We do' or 'We do not'.

"ANSWER: 'We do'

"If you have answered special issue No. 1 'We do', and only in that event, then answer:

"Special Issue No. 2

"Do you find from a preponderance of the evidence that Mose Sims, Leverne Edward Sims, Annie G. Sims, Alvin E. Sims, and Maurice Jewel Sims held exclusive, peaceable and adverse possession of the land in controversy in this suit, cultivating, using or enjoying the same for any consecutive period of ten years between 1930 and April 17, 1970?

"Answer 'We do' or 'We do not'.

"ANSWER: 'We do'

If you have answered Special Issue No. 2 'We do', and only in that event, then answer:

"Special Issue No. 3

"What consecutive period of ten years do you find from a preponderance of the evidence to have been so adversely and exclusively held?

"Answer by stating a beginning date and an ending date.

"ANSWER: Beginning January month, 1945 year.

Ending January month, 1955 year."

After the jury's verdict, the trial court granted a motion for judgment n. o. v. and entered judgment for Mrs. Cage. We affirm.

■ In the year 1929 F. O. Perkins, who had acquired the property from the administrator of the estate of G. A. Singleton, the remote grantor of Mrs. Cage, recovered a judgment in trespass to try title against the Sims family and others covering the same property which is in controversy in this suit. It is undisputed that the Sims family lived on the two-acre tract at the time this judgment was entered and was using the land in controversy for the purpose of grazing its cattle. The continued possession of the Sims family after the entry of this judgment must be deemed permissive and not adverse to the title of the record owner, unless and until it was shown that the record owner had knowledge or notice that such permissive relationship had been repudiated. Sweeten v. Park, 154 Tex. 266, 276 S.W.2d 794 (1955); Green v. Vance, 158 Tex. 550, 314 S.W.2d 794 (1958).

Alvin E. Sims, one of the defendants and a son of Mose and Sarah Sims, testified that he was born in 1920 on the two-acre tract. The first time he recalled being on the land in controversy was about the year 1929. He said his father was using the property at that time and continued to use it for pasturing cattle up until the time he died in 1955. He said the land was primarily used for raising cattle and horses and he did not know of any period of time after 1929 that his father and the family did not use the property. He said in about 1929 or 1930 his father had cattle and horses on the land in controversy and that Mr. Perkins also had a horse in the same pasture. He did not recall anything about the 1929 judgment but did recall that

Perkins and his wife lived on the land and had a house in the northeast corner. He said he remembered the house being there in 1929 and that Perkins and his wife lived there until it burned down several years later. He said Perkins and his father had a very good relationship. He testified that as long as he could remember there had been a fence around the land in controversy but he didn't know who had first erected the fence. He testified that the land was entirely fenced "except for a few openings" where their cattle entered the two-acre tract and that they used the smaller tract as a "holding" lot for their livestock. He said he and his family had maintained the fences on the larger tract and that the fences had not been changed in any respect while he was familiar with the property.

Guy Smith, age 79, a witness for the Sims family, had lived in the vicinity of the property all his life. He testified that from about 1930 until the present the Sims family had run their stock on the land in controversy. He said he had passed by the property going to Crosby from Huffman and that he had observed their cattle on the land. He said the Sims family used to break horses on the property and they broke several horses for him. He had observed no one other than the Sims family using the property. He said the Sims family farmed a part of the property for awhile in the 1940's, but did not testify for how long or to what extent they farmed the land. He recalled that Perkins had a garden at his house about the time the house burned but he didn't recall whether Perkins continued to maintain the garden after that time. He testified that the tract was wooded and that if you drove down the road next to it you could not see very far back into it because of the trees. He said that due to this factor, the property was not worth much as grazing land as not very many cows could be pastured on it. He said he did not see cattle every time he passed by and there were times he would pass and see no activity because of the

trees. He testified that most of the time he saw no activity and that the only time he saw any activity was when a cow happened to stray close to the fence.

Another of the defendants, Leverne Edward Sims, born in 1927 on the two-acre tract and raised there, testified that he remembered the land in controversy since the year 1934 or 1936. He testified that from that time until the present, his father and his family had used the property for grazing their cattle and horses and for cutting wood. He said no one had ever interfered with their use. His recollection was that the fence around the property had been there as long as he could remember. He said he could not recall any logging operations on the property prior to 1955 and that his family just cut timber for posts or fire wood.

Mr. Lloyd Clark, Sr., a witness for the Sims family, had lived across the road from the property since about 1920. He did not know whose fence was around the land but supposed it to belong to Sims. He could not recall any time that the property had not been continually fenced. He could not recall any time that the Sims family had not used the property and he did not know of any cattle other than those of the Sims family being on the property. He testified that the property upon which the Sims house was located and the land in controversy were "all under the same fence." He did not know about the "two acres" and he considered the Sims property to be "the whole tract." He said the Sims family had cattle on the property as far back as 1919 and that their use of the property from that time up to the present time had not changed much. He said the fence around the land in controversy had been there as long as he could remember and that he did not see it installed but had seen it being fixed up and maintained.

The other witnesses in the case tended to substantiate this testimony. From the testimony presented, it appears to be undisputed that the Sims family was in posses-

sion of the two-acre tract and making use of the land in controversy prior to the 1929 judgment. It also appears undisputed that the property was at that time fenced in substantially the same manner as existed throughout the claimed period of limitations. The Sims family only used the property for grazing horses and cattle and cutting wood for their own use during the claimed period of limitations. The Sims family erected no houses or other improvements on the land in controversy and only maintained the fences in a state of repair necessary to contain and exclude cattle.

■ The evidence, considered in a light most favorable to the Sims position, shows merely an incidental enclosure and the casual grazing of an undetermined number of cattle. It was undisputed that the Sims cattle were sometimes grazed on the two-acre tract. On such occasions there would have been no indication to the record owner of any use being made of the land in controversy for grazing purposes. The Sims family had the right to maintain the fences between their two-acre tract and the land in controversy and there is no evidence that the Sims family built fences which "designedly enclosed" the land in controversy.

"Part of the unenclosed commons might become enclosed as a result of being fenced out by surrounding owners. The grazing of an enclosure thus 'casually' or 'incidentally' created has never been regarded as an actual and visible appropriation of the land within the meaning of Article 5515, Vernon's Ann. Civ.Stat. In the absence of special stock laws, an owner who does not properly fence his property has no cause of action for damage done by cattle of ordinary disposition that enter the land. Clarendon Land Investment & Agency Co., v. McClelland, 86 Tex. 179, 23 S.W. 576. If the owner of land enclosed with that of another wishes to prevent the latter's livestock from grazing on his property, his remedy is to construct a suitable fence for that purpose. Pace v. Potter, 85 Tex. 473, 22 S.W. 300. It would be rather strange then to hold that a person might acquire limitation title by simply doing that which he is legally entitled to do, i. e. permit his livestock to wander and graze upon land that he happened to find enclosed with his own deeded or leased land.

"It is accordingly well settled that the mere grazing of land incidentally enclosed as a result of the construction of fences built for another purpose does not constitute possession that will ripen into title by limitation. The adverse claimant who relies upon grazing only as evidence of his adverse use and enjoyment must show as part of his case that the land in dispute was designedly enclosed. (Citing cases)." McDonnold v. Weinacht, 465 S.W.2d 136, 141 (Tex.1971).

■ The occasional cutting of timber by the Sims family for their own domestic purposes was not such use and possession as would sustain a claim of title under the limitation statute. Kirby Lumber Corp. v. Lindsey, 455 S.W.2d 733, 741 (Tex.1970). Although there was testimony that the Sims family may have planted "oats or something" on the land during the 1940's, it is not contended that the land was cultivated for a sufficient period of time to mature title by limitation. The Sims family paid no taxes with respect to the land in controversy and to the extent that the evidence shows payment of taxes, such taxes were paid by the record owner.

■ It has been held that one seeking to establish title to land by virtue of the statute of limitations must meet his burden of proof by clear and satisfactory evidence. Chapa v. Garcia, 513 S.W.2d 953 (Tex. Civ.App.—San Antonio, writ ref'd n. r. e.). We hold that the evidence offered on behalf of the Sims family was legally insufficient to support their claim of a limitation title.

We also hold that the use and possession of the land in suit by the Sims family after the entry of the 1929 judgment was not of such character as would place the record owner on notice that the land was being adversely claimed. It is undisputed that no substantial change was made in the location or character of the fences around the land in controversy and the use made of the land after the judgment was consistent with the use made of the land prior to that time.

In order to establish notice to the record owner that the permissive character of possession has been repudiated, the adverse claimant must prove that his acts were of such clear and unequivocal nature and notoriety, and were so distinctly hostile to the rights of the true owner, that his intent to claim the land by adverse possession is clear and unmistakable. Rau v. Christy, 383 S.W.2d 957 (Tex.Civ.App.—Waco 1964, no writ); Achille v. Baird, 361 S.W.2d 439 (Tex.Civ.App.—Houston 1962, writ ref'd n. r. e.). The evidence was legally insufficient to support an inference that the record owner was placed upon notice of the claimed intent of the Sims family to hold the land adversely. Killough v. Hinds, 161 Tex. 178, 338 S.W. 2d 707 (1961); Orsborn v. Deep Rock Oil Corp., 153 Tex. 281, 267 S.W.2d 781 (1954).

The Sims family contends in its reply brief that after the taking of the 1929 judgment against it by Perkins, the record owner, its use was not possessory since Perkins was then living on the land, and that when Perkins later moved away, its subsequent use amounted to a re-entry and resumption of possession, citing American National Bank of Beaumont v. Wingate, 266 S.W.2d 934 (Tex.Civ.App.—Beaumont 1953, writ ref'd n. r. e.). We cannot agree with this contention. It is undisputed that the Sims family continued to make the same use of the property after the judgment as it had before its entry. The fact that its use was not then exclusive and was consistent with the use being made of the property by Perkins, merely tends to substantiate the permissive character of such use.

We hold that the trial court properly entered judgment in favor of Mrs. Case, the record title owner, notwithstanding the jury's verdict on the issues submitted.

Affirmed.