978 P.2d 727

**PIONEER MILL COMPANY, LIMITED,**
Respondent/Plaintiff–Appellee,

v.

James R. DOW (k), F.W. Hutchison (k), Kamahiaiole (w), also known as Mahiaiole (w), George Phillips (k), Kia Nahaolelua (k), also known as Edward George Huakini (k), Becky Nahaolelua (w), also known as Rebecca Nahaolelua (w), Elizabeth Nahaolelua (w), also known as Elizabeth N. Tallant (w), Alice Nahaolelua (w), also known as Alice Kia Nahaolelua (w) and Alice Kia Nahaolelua Dutro (w), Rebecca P. Ling (w), also known as Rebecca Piilani Nahaolelua Ling (w), Elizabeth Nahaolelua (w), Rhoda Dunn Gleason (w), Patrick H. Gleason Jr. (k), Eugene Bal Dunn Gleason (k), also known as Eugene Gleason (k), Rhoda N. Vierra (w), Emily Nahaolelua (w), also known as Margaret K. Nahaolelua McCaffery (w), George Nahaolelua (k), George Kia Nahaolelua (k), Henrietta Kia Nahaolelua (w), Henrietta Kia Nahaolelua (w), Alexander P. Almeida (k), Herbert J. Almeida (k), Patricia K. Brandt (w), Solomon K. Colburn Jr. (k), Henrietta N. Namahoe (w), also known as Henrietta Kia Nahaolelua (w), Henrietta Stuckman (w) and Henrietta Kekahili Namahoe (w), Lynn Haliimaile Namahoe (w), also known as Lynn Haliimaile Kahalioumi (w) and Lynn H. Black (w), Milicent Hanaolelua (w), also known as Milicent N. Kaaihue (w) and Millicent Kaaihue (w), Naome Nahaolelua (w), also known as Naomi Munekata (w), Len Kia Nahaolelua (k), Charles K. Nahaolelua (k), Alice K. Nahaolelua (w), David W. Tallant Jr. (k), heirs and assigns, and All Whom It May Concern, Defendants,

and

Elizabeth Kekahili Ah Heong Ling (w), also known as Elizabeth Ling Burton (w), Patrick Nahonopiilani Ling (k), also known as Patrick Ling (k), Herbert K. Dunn (k), also known as Herbert Dunn (k) and Herbert Kitchener Dunn (k), Margaret Ann Farris (w), also known as Margaret D. Farris (w), Dorothy Nahaolelua (w), also known as Dorothy St. John Nahaolelua (w), Ruth Nahaolelua (w), also known as Ruth St. John Nahaolelua Grant (w), Yvonne H. Chang (w), Loretta L. Cho (w), Henry Dutro (k), Maureen Johnston (w), Petitioners/Defendants–Appellants.

No. 20926.

Supreme Court of Hawai'i.

March 31, 1999.

As Amended on Denial of Reconsideration May 11, 1999.

Carl C. Christensen (Arnold L. Lum with him on the brief), on the briefs, Honolulu, of Native Hawaiian Legal Corporation for petitioners/defendants-appellants.

Donald E. Scearce of Cades, Schutte, Fleming & Wright, on the briefs, Honolulu, for respondent/plaintiff-appellee.

MOON, C.J., KLEIN, LEVINSON, NAKAYAMA, and RAMIL, JJ.

Opinion of the Court by RAMIL, J.

On February 19, 1999, we granted petitioners/ defendants-appellants Herbert Dunn, et al. (hereinafter referred to as the "Dunn Defendants" or Petitioners)'s application for a writ of certiorari with respect to the Intermediate Court of Appeals' (ICA) decision in *Pioneer Mill Co., Ltd. v. Dow et al.*, No.

20926, mem. op. (Ct.App.Haw. January 12, 1999) (hereinafter, the "ICA's decision"), affirming the circuit court's grant of summary judgment in favor of respondent/ plaintiff-appellee Pioneer Mill Company, Limited (hereinafter referred to as Pioneer or respondent).

In this action to quiet title based upon adverse possession, Petitioners essentially contend that the ICA erred in: (1) holding that article XVI, section 12 of the Hawai'i Constitution (1978) does not preclude a party from asserting separate adverse possession claims to separate parcels in a given twenty-year period; (2) holding that the good faith requirement, as contained within article XVI, section 12 and Hawai'i Revised Statutes (HRS) § 669-1 (1993),[1] does not apply retroactively; (3) concluding that a presumption of hostile possession arose even though (a) a familial relationship existed between the true owners and Pioneer's predecessor-in-interest, creating a presumption of permissive possession, (b) Pioneer's predecessor-in-interest originally obtained possession of the subject property as an estate administrator, creating a presumption of continued permissive possession, and (c) Pioneer's predecessor-in-interest was also a fiduciary of the true owners of the parcel, thereby requiring actual notice of adverse possession; and (4) relying upon inadmissible evidence in reaching its conclusion that the presumption of hostility existed and that the burden rested with Dunn Defendants to rebut the presumption.

We disagree with Petitioners' first and second points of error. In this regard, the legal reasoning employed and the conclusion reached by the ICA are correct.[2] However, we agree with Petitioners' third and fourth points of error on appeal. We hold that a genuine issue of material fact exists regarding whether Pioneer's possession of the parcel was permissive and, therefore, that Pioneer was not entitled to judgment as a matter of law. Furthermore, the circuit court and the ICA relied upon documents that were not properly

1. HRS § 669-1 provides in pertinent part:
    **Object of [quiet title] action.** (a) Action may be brought by any person against another person who claims, or who may claim adversely to the plaintiff, an estate or interest in real property, for the purpose of determining the adverse claim.
    (b) Action for the purpose of establishing title to a parcel of real property of five acres or less may be brought by any person who has been in adverse possession of the real property for not less than twenty years. Action for the purpose of establishing title to a parcel of real property of greater than five acres may be brought by any person who had been in adverse possession of the real property for not less than twenty years prior to November 7, 1978, or for not less than earlier applicable time periods of adverse possession. *For purposes of this section, any person claiming title by adverse possession shall show that such person acted in good faith.* Good faith means that, under all the facts and circumstances, a reasonable person would believe that the person has an interest in title to the lands in question and such belief is based on inheritance, a written instrument of conveyance, or the judgment of a court of competent jurisdiction.
    (c) Action brought to claim property of five acres or less on the basis of adverse possession may be asserted in good faith by any person not more than once in twenty years, after November 7, 1978....
(Emphasis and brackets added.)

2. Petitioners first argued on appeal that Pioneer was precluded from bringing the instant adverse possession claim because a party can bring only one adverse possession claim per any twenty-year period, and Pioneer had instituted an adverse possession claim regarding another parcel in another case. Article XVI, section 12 of the Hawai'i Constitution provides that: "No person shall be deprived of title to an estate or interest in real property by another person claiming actual, continuous, hostile, exclusive, open and notorious possession of such lands, except to real property of five acres or less. Such claim may be asserted in good faith by any person not more than once in twenty years." The ICA correctly concluded that "a claimant may assert more than one claim in a twenty-year period but not with respect to the same parcel(s) of land." ICA memo. op. at 7.

    Petitioners also argued that Pioneer was obligated, pursuant to article XVI, section 12 of the Hawai'i Constitution and HRS § 669-1, to act in good faith when asserting its claim of title by adverse possession. Inasmuch as Pioneer's claim ripened prior to the November 7, 1978 ratification of the constitutional amendment resulting in the aforementioned good faith requirement, the ICA correctly concluded that the good faith requirement was "prospective in nature and that all claims that have already matured under present statutes and common law are recognized." *Id.* at 9 (citing Stand. Comm. Rep. No. 57, in 1 *Proceedings of the Constitutional Convention of 1978* at 637, 641 (1980)).

sworn to or certified in accordance with Hawai'i Rules of Civil Procedure (HRCP) Rule 56(e). We therefore reverse the decisions of the ICA and circuit court and remand the matter to the circuit court for proceedings consistent with this opinion.

## I. BACKGROUND

### A. The History of the Case

In 1848, Thomas Phillips was awarded Land Commission Award No. 83, consisting of a one-third acre of land located at Alio and Ko'oka, Lahaina, Maui (also referenced as Land Patent No. 8189, and Tax Key designation (2) 4-6-2-5 (portion)) (hereinafter referred to as the "Lahaina property"). Phillips died intestate in 1864 without conveying the property, and his wife, Kahoomaeha, died later that same year.

On November 8, 1865, John White (a.k.a. John Kahue), the brother of Phillips' first wife, Fanny (who died in 1853), was appointed as one of the administrators of Phillips's estate. On June 25, 1866, White received rental income for the Lahaina property on behalf of the Phillips estate. On July 25, 1866, the court discharged the administrators and accepted Kahoomaeha's will, which devised two succeeding life estates to her daughter, Kamahiaiole, and her grandson, George Phillips, respectively, with a remainder interest to P. Nahaolelua. On February 5, 1867, the probate court declared that Phillips's assets, including the Lahaina property, were owned one-half by the estate of Kahoomaeha and one-half by John White, Phillips's brother-in-law. The executor of Kahoomaeha's estate objected and sought reconsideration. On February 23, 1867, the probate court amended its decision and awarded the entirety of Phillips's assets to Kahoomaeha's estate.[3]

On April 17, 1880, John White conveyed the Lahaina property by deed to his son, William White, and his grandson, Manase

William White. On March 28, 1887, William and Manase deeded the land in full to William White. On June 12, 1907, William White conveyed the Lahaina property by warranty deed to E.G. Ferreira, who obtained Land Patent No. 8189 on December 14, 1907. Ferreira conveyed the property to Emil Kruse, in a trustee capacity, who in turn deeded the property to H. Hackfeld and Company, Limited, on January 9, 1911. On October 7, 1912, H. Hackfeld and Company deeded the Lahaina property to Lahaina Agricultural Company, which conveyed the property to Plaintiff Pioneer on April 2, 1924. Thereafter, Pioneer continuously and exclusively used the Lahaina property for employee housing from approximately 1927 to the present day.

### B. The Quiet Title Action

Based upon the apparent lack of a chain of title from Thomas Phillips or the estate of Kahoomaeha to John White, Pioneer instituted a quiet title action based upon adverse possession, on March 7, 1994, to establish fee simple title to the Lahaina property. The announcement and summons was published in the Maui News and the Honolulu Advertiser on March 23 and 30, 1994 and April 6 and 13, 1994. As one of the Defendants named in the complaint and as a potential party claiming title to the Lahaina property, Herbert Dunn filed an answer pro se to Pioneer's complaint on March 30, 1994.[4]

Plaintiff Pioneer moved for summary judgment on July 22, 1994. Pioneer argued that it was undisputed that Pioneer Mill "openly, notoriously, continuously and exclusively used the land" well beyond the statutory period, and that there would be no evidence at trial that Pioneer used the land with the permission of the defendants. In fact, Pioneer argued, there was a presumption of hostile possession under Deponte v. Ulupalakua Ranch, 48 Haw. 17, 19, 395 P.2d 273, 275, reh'g denied, 48 Haw. 149, 396 P.2d 826

---

3. The title owners, including the Dunn Defendants, claim through either inheritance, devise, and/or chain of title from Kahoomaeha's estate.

4. According to the record, the following pro se defendants also filed answers: Patrick N.F. Ling, Eugene B. Gleason, Loretta L. Cho, Henry Du-

tro, Alexander P. Almeida, Patrick H. Gleason, Patricia K. Brandt, Rhoda N. Vierra, David W. Tallant Jr., Elizabeth K. Burton, Dorothy N. Nahaolelua, Ruth St. John Grant, Yvonne H. Chang, Maureen Johnston, and Margaret Ann Dunn Farris.

(1964). In support of its argument, Pioneer provided the affidavits of three witnesses who could attest to their knowledge of Pioneer's use of the land in an open, notorious, continuous, and exclusive manner for a period ranging from 1930 to the present. Pioneer also provided a photocopy of a Status Title Report, prepared by George Uehara of Title Guaranty of Hawaii, Inc. The report was sworn to by Pioneer's counsel, not George Uehara, and was not certified. Pioneer supplemented its motion for summary judgment on August 11, 1994 with a translation of the probate of Kahoomaeha's estate, as translated from Hawaiian to English by Edith McKinzie. The report was sworn to by Pioneer's counsel, not Edith McKinzie, and was not certified.

The Dunn Defendants first countered by objecting to the title report proffered by Pioneer as inadmissible under HRCP Rule 56(e) and Hawai'i Rules of Evidence (HRE) Rule 802. The Dunn Defendants also argued that White, the predecessor-in-interest to Pioneer, originally took permissive possession, which presumptively continued as permissive under *Smith v. Laamea*, 29 Haw. 750, 759 (1927), and *Root v. Woolworth*, 150 U.S. 401, 414–15, 14 S.Ct. 136, 37 L.Ed. 1123 (1893), and extended to the possession of successors-in-interest under *Tindle v. Linville*, 512 P.2d 176, 178 (Okla.1973), and *Johnson v. Szumowicz*, 63 Wyo. 211, 179 P.2d 1012, 1017 (1947). The Dunn Defendants argued that a presumption of permissive possession arose based upon White's (1) position as estate co-administrator, (2) familial relationship with Kahoomaeha, and (3) previous one-half interest, making him a cotenant who was required to give actual notice if his possession later became hostile. In support, the Dunn Defendants provided (1) certified copies of the deeds from John White to William and Manase White and from Manase White to William White, (2) copies of their translation, sworn to and translated by Ipolani Vaughn, (3) a certified copy of the 1878 lease from White to Turton, (4) a copy of its translation, sworn to and translated by Ipolani Vaughn, (5) a certified copy of the probate of the estate of Thomas Phillips, (6) a copy of its

translation, sworn to and translated by Ipolani Vaughn, (7) a certified copy of the probate of Kahoomaeha's estate, (8) a copy of its translation, sworn to and translated by Ipolani Vaughn, and (9) a certified copy of the rental receipt received by White on behalf of the estate on June 25, 1866.

In short, Pioneer responded that the Dunn Defendants had failed to produce evidence that White was ever in possession of the property, let alone permissive possession, and that the Dunn Defendants had failed to rebut the presumption of hostile possession.

After hearings on August 11, 1994 and September 22, 1994, the circuit court granted Pioneer's motion for summary judgment and entered judgment in favor of Pioneer, on September 30, 1994. The Dunn Defendants appealed.[5]

### C. *The ICA's Decision*

On appeal, Petitioners challenged the circuit court's decision that they did not satisfy their burden of rebutting the presumption that Pioneer's possession was hostile. The ICA concluded that Petitioners' challenge lacked merit, stating that:

> where one is shown to have been for the statutory period in actual, open, notorious, continuous and exclusive possession, apparently as owner, and such possession is unexplained, either by showing that it was under a lease from, or other contract with or otherwise by permission of the true owner, the presumption is that such possession was hostile.

> *Deponte v. Ulupalakua Ranch, Limited,* 48 Haw. 17, 19, 395 P.2d 273, 275 (1964) (citations and quotation marks omitted).

> In this case, [Pioneer Mill Company Limited ("PMCL")] has had actual, open, notorious, continuous and exclusive possession of LCA 83/LP 8189 as its apparent owner since 1927. Therefore, PMCL's possession is presumed to be hostile and Appellants have the burden of rebutting this presumption. While Appellants correctly state that the "presumption of ad-

---

5. Dunn Defendants' appeal was dismissed as premature on June 13, 1997. A final judgment was entered on July 1, 1997, and this timely appeal followed.

versity arises only if permissive entry is not at issue," *see Miller v. Bell,* 764 P.2d 389, 390 (Colo.Ct.App.1988), Appellants have the burden of presenting evidence that permissive entry is in fact at issue. *See Tagami v. Meyer,* 41 Haw. 484, 488 (1956) (stating "permissive use of the land at the inception of defendant's occupation carries with it the presumption that such use continues permissive.")[.] In addition, even if Appellants satisfy their burden, PMCL would still be entitled to summary judgment if it can show that it is undisputed that its presumptively permissive possession timely changed into hostile possession.

. . . .

In order for Appellants to successfully "explain" PMCL's possession, rebut PMCL's presumption of hostility, and defeat PMCL's summary judgment motion, appellants must offer specific facts, as opposed to general allegations, *see GECC Financial,* 79 Hawai'i at 521, 904 P.2d at 535, that: (A) White was in possession; (B) White's possession was permissive; and (C) PMCL's possession is permissive as a result of the permissive nature of White's possession.

ICA's decision at 9–11. Despite Pioneer's concession that the "inference may be drawn that John White may have been in *temporary* possession between November 8, 1865 and July 25, 1866[,]" ICA's decision at 12, the ICA concluded that there was no evidence to show that White remained in possession after he was released as co-administrator.

The ICA then addressed Petitioners' contention that Pioneer's possession began and continued permissively. Regarding the presumption of permissiveness based upon the claimant's familial relationship with the true owner, the ICA concluded that White did not meet the criteria enunciated in *Yin v. Midkiff,* 52 Haw. 537, 540, 481 P.2d 109, 111–12 (1971) ("[W]henever the parties to the action are cotenants and closely related by ties of blood, the burden of the cotenant claiming adversely is intensified."). Because White was the brother of Phillips's first wife (*i.e.,* Phillips's brother-in-law), but was not "closely related by ties of blood" to Kahoomaeha

(Phillips's second wife), her daughter, son, or grandchildren, the ICA concluded that the familial presumption of permissiveness did not apply. *Id.* at 14.

Regarding cotenancy, the ICA concluded that, because the probate court's "original conclusion was wrong" and was corrected upon reconsideration on February 23, 1867, the general rule requiring a cotenant to give actual notice of an adverse claim to other cotenants did not apply; in other words, White, as a discharged co-administrator, no longer had a right to possess the property and did not have the status of a cotenant. *Id.* at 16 (citing *City and County of Honolulu v. Bennett,* 57 Haw. 195, 208–09, 552 P.2d 1380, 1390 (1976)).

The ICA also concluded that White's possession as co-administrator ceased to be permissive on July 25, 1866, when he was discharged as co-administrator, "and any subsequent possession was hostile." *Id.* at 15 (relying upon *Poka v. Holi,* 44 Haw. 464, 479–80, 357 P.2d 100, 109, *reh'g denied,* 44 Haw. 582, 358 P.2d 53 (1960) (The general rule is that "an administrator will not be deemed to be asserting an adverse claim while he remains in office as administrator."); *Kalakaua v. Keaweamahi,* 4 Haw. 571, 573 (1883) (stating that "[i]f the administrator was . . . entitled to the possession of the property in suit, it was only temporarily[.]"); *Kahukuleionohi v. Kaikainahaole,* 6 Haw. 183, 184 (1876) (holding that "the administrator, whatever authority he might have had over the land in consequence of his trust, from the moment of his discharge ceased to have any such authority, and from this time his holding was adverse[.]")).

Regarding an adverse judgment, the ICA finally explained that

[t]here is a general rule that "the continued possession of land after a judgment divesting the one in possession of title and vesting it in another is not adverse until notice of a hostile claim is brought home to the prevailing party." 3 Am.Jur.2d, *Adverse Possession* § 54 (footnote omitted); *see also Root v. Woolworth,* 150 U.S. 401, 414–15, 14 S.Ct. 136, 37 L.Ed. 1123 (1893) (cited in *In re Maka,* 16 Haw. 48, 50–51

(1904)[] ]; *Sweeten v. Park,* 154 Tex. 266, 276 S.W.2d 794 (1955).

In *Sims v. Cage,* 523 S.W.2d 486 (Tex. Civ.App.1975), the court ruled that where there is a judgment divesting the title of a person in possession,

> [t]he continued possession of the [heirs of that person] after the entry of this judgment must be deemed permissive and not adverse to the title of the record owner, unless and until it was shown that the record owner had knowledge or notice that such permissive relationship had been repudiated.

*Id.* at 488 (citations omitted)....

Therefore, where an adverse judgment divests a party of title and the divested party remains in permissive possession, the continuing possession of the successors in interest of the divested party is also presumptively permissive. This rule is consistent with the "spirit opposed to the unduly facile acquisition of title by adverse possession" expressed by the Hawai'i Supreme Court in *Bennett. Bennett,* 57 Haw. at 208, 552 P.2d at 1389.

*Id.* at 16–17 (some brackets added and some in original). The ICA concluded that "only the court's conclusion on February 23, 1867 was possibly a 'judgment' and it did not 'divest' White of 'title' and vest 'title' in another." *Id.* at 17–18.

## II.  *DISCUSSION*

### A.  *Standard of Review*

The ICA relied upon *GECC Financial Corp. v. Jaffarian,* 79 Hawai'i 516, 521, 904 P.2d 530, 535 (App.1995), *modified,* 80 Hawai'i 118, 905 P.2d 624 (1995), in affirming the instant grant of summary judgment. The ICA characterized the applicable standard of review as follows:

> "Where the moving party is the plaintiff, who will ultimately bear the burden of proving plaintiff's claim at trial, the plaintiff must ... establish, by the quantum of evidence required by the substantive law, each element of its claim for relief[.]" [*GECC Fin. Corp.,* 79 Hawai'i at 521–22, 904 P.2d at 535–36 (footnote added) ].

Moreover, "adverse possession is to be taken strictly, and every presumption is in favor of a possession in subordination to the rightful owner." *Morinoue[ v. Roy],* 86 Hawai'i [76,] 81, 947 P.2d [944,] 949 [ (1997) ] (citation omitted).

Although the inferences to be drawn from the underlying facts alleged in the relevant materials must be viewed in the light most favorable to the non-moving party, *Jaffarian,* 79 Hawai'i at 521, 904 P.2d at 535 (citation omitted), the court is permitted to draw only those inferences of which the evidence is reasonably susceptible and it may not resort to speculation. *Waimea Falls Park, Inc. v. Brown,* 6 Haw. App. 83, 97, 712 P.2d 1136, 1146 (1985) (citation omitted).

ICA's decision at 5–6 (brackets added). However, *GECC Financial Corp.* also stated the following:

> Summary judgment is a drastic remedy. To avoid improperly depriving a party to a lawsuit of the right to a trial on disputed factual issues, summary judgment must be "cautiously invoked." *Miller v. Manuel,* 9 Haw.App. 56, 65–66, 828 P.2d 286, 292 (1991), *cert. denied,* 72 Haw. 618, 841 P.2d 1075 (1992). Summary judgment should only be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any (hereinafter "relevant materials"), show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Hawai'i Rules of Civil Procedure (HRCP) Rule 56(c) (1990).
>
> The burden is on the party moving for summary judgment (moving party) to show the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitles the moving party to judgment as a matter of law. *First Hawaiian Bank v. Weeks,* 70 Haw. 392, 396, 772 P.2d 1187, 1190 (1989); 6 J. Moore, *Moore's Federal Practice* (hereinafter *Moore's Federal Practice* ) ¶ 56.15[3] at 56–249—56–250 (2d ed.1995)....
>
> ....

... [T]he moving party bears the ultimate burden of persuasion. This burden always remains with the moving party and requires the moving party to convince the court that no genuine issue of material fact exists and that the moving party is entitled to summary judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 332, 106 S.Ct. 2548, 2557, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting); M. Nelken, One Step Forward, Two Steps Back: Summary Judgment After Celotex, 40 Hastings L.J. 53, 55 n. 9 (1989); G. Foremaster, The Movant's Burden in a Motion for Summary Judgment, 1987 Utah L.Rev. 731, 734–35.

The moving party's burden of proof is a stringent one, since the inferences to be drawn from the underlying facts alleged in the relevant materials considered by the court in deciding the motion must be viewed in the light most favorable to the non-moving party, Fernandes v. Tenbruggencate, 65 Haw. 226, 228, 649 P.2d 1144, 1147 (1982), and any doubt concerning the propriety of granting the motion should be resolved in favor of the non-moving party. Wright v. Fireman's Fund Ins. Cos., 11 Cal.App.4th 998, 1011, 14 Cal.Rptr.2d 588, 595 (1992); 10 Wright's Federal Practice § 2716, at 643–46.

The evidentiary standard required of a moving party in meeting its burden on a summary judgment motion depends on whether the moving party will have the burden of proof on the issue at trial. 6 Moore's Federal Practice § 56.15[3] at 56–266—56-267; M. Nelken, 40 Hastings L.J. 53, 55 n. 9 (1988); Foremaster, 1987 Utah L.Rev. 731, 735–36.

. . . .

On appeal, an award of summary judgment is reviewed under the same standard applied by the trial court. Wong–Leong v. Hawaiian Indep. Refinery, 76 Hawai'i 433, 438, 879 P.2d 538, 543 (1994). This involves a three-step analysis:

First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond. . . .

Secondly, we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in movant's favor. The motion must stand self-sufficient and cannot succeed because the opposition is weak . . . . [6]

When a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue. Counter-affidavits and declarations need not prove the opposition's case; they suffice if they disclose the existence of a triable issue.

AARTS Productions, Inc. v. Crocker Nat'l Bank, 179 Cal.App.3d 1061, 225 Cal.Rptr. 203, 205–06 (1986) (citations omitted). See also Wright, 11 Cal.App.4th at 1012, 14 Cal.Rptr.2d at 595.

GECC Financial Corp., 79 Hawai'i at 521–22, 904 P.2d at 535–36 (emphases and footnote added); accord Frank v. Hawaii Planing Mill Foundation, 88 Hawai'i 140, 144, 963 P.2d 349, 353 (1998); Konno v. County of Hawai'i, 85 Hawai'i 61, 70, 937 P.2d 397, 406 (1997).

Indeed, "[t]he evidence must be viewed in the light most favorable to the non-moving party. . . . In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to [the party opposing the motion]." Morinoue v. Roy, 86 Hawai'i 76, 80, 947 P.2d 944, 948 (1997) (emphasis added) (brackets in original) (internal quotation marks and citations omitted).

B. *Pioneer Did Not Prove by Clear and Positive Proof that It Adversely Possessed the Lahaina Property as a Matter of Law.*

█ In Morinoue, 86 Hawai'i at 81, 947 P.2d at 949, this court stated that

is not required to disprove affirmative defenses asserted by a defendant in order to prevail on a motion for summary judgment.

---

6. In *GECC Financial Corp.*, 80 Hawai'i at 119, 905 P.2d at 625, this court modified the ICA's decision in *GECC Financial Corp.*, 79 Hawai'i 516, 904 P.2d 530, insofar as the plaintiff-movant

"[i]t is well established that *one claiming title to real property by adverse possession must bear the burden of proving by clear and positive proof each element* of actual, open, notorious, hostile, continuous[,] and exclusive possession for the statutory period." *Lai v. Kukahiko,* 58 Haw. 362, 368–69, 569 P.2d 352, 357 (1977) (citations omitted). The burden of "clear and positive proof" derives from the long-observed proposition that "[a]dverse possession is to be taken strictly, and *every presumption is in favor of a possession in subordination to the rightful owner.*" *Territory v. Pai-a,* 34 Haw. 722, 726 (1938) (citation and internal quotation signals omitted). Thus, in the present case, the already formidable preconditions to prevailing on a motion for summary judgment combine with the similarly demanding requisites of a prima facie case of adverse possession in such a manner as to render the [movant's] initial burden particularly heavy.

(Emphases added.) (Footnote omitted.)

1. *Pioneer's Documentation Submitted in Support of Its Summary Judgment Motion Was Not Properly Sworn to or Certified and Was Therefore Inadmissible.*

■ HRCP Rule 56(e) provides:

**Form of Affidavits; Further Testimony; Defense Required.** *Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.* The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Hawai'i appellate courts have interpreted this provision to require documentation submitted in support of a summary judgment motion to be properly sworn to or to be certified. Documents that are plainly inadmissible in evidence and are unsworn, not properly sworn to, and/or uncertified cannot be considered upon a summary judgment motion. *See Takaki v. Allied Machinery Corp.,* 87 Hawai'i 57, 69, 951 P.2d 507, 519 (App.1998); *Munoz v. Yuen,* 66 Haw. 603, 605, 670 P.2d 825, 826 (1983) (*per curiam* ). Furthermore, unless counsel wishes to relinquish his or her role as advocate and become a witness in the case, an affidavit of counsel swearing to the truth and accuracy of exhibits does not authenticate exhibits not sworn to or uncertified by the preparer or custodian of those exhibits. *See generally, Fuller v. Pacific Medical Collections, Inc.,* 78 Hawai'i 213, 223–25, 891 P.2d 300, 310–12 (App.1995).

■ Here, the two documents submitted by Pioneer addressing the origin of its possession, (1) the Status Title Report, prepared by George Uehara of Title Guaranty, and (2) the probate of Kahoomaeha's estate, as translated by Edith McKinzie, were sworn to by Pioneer's counsel, not by the preparers or custodians of these records. Therefore, Pioneer's "evidence" addressing the nature of John White's possession, *i.e.,* establishing that John White had no right or title to possess the Lahaina property, was inadmissible and improperly relied upon by both the circuit court and the ICA.

Despite the requirement under HRCP Rule 56(e), at the August 11, 1994 hearing, Pioneer's counsel explained:

Now if we want to play technical games in this place by me having somebody swear to the Court that this is Edith MacKenzie's [sic] translation, we can do that. But I think, your honor, you know, I don't do that kind of stuff. I don't engage in that kind of behavior in this courtroom. I don't have any question about the authenticity of what Edith MacKenzie has done and I don't question the authenticity of [opposing counsel's] translator.

Aside from the fact that opposing counsel provided translations properly sworn to by their translator, counsel's vouching for the authenticity of Edith McKinzie's translations does not sufficiently comply with HRCP Rule 56(e).

Some may argue that this court's requirement that counsel comply with HRCP Rule 56(e) is the equivalent of form over substance. However, we believe that HRCP Rule 56(e) provides substance *through* form. It is the only way that a circuit court, amidst all of its other duties, can efficiently and uniformly insure that summary judgment is granted or not granted based upon evidence that will be admissible at trial.

The unverified statements of fact alleged in counsel's memorandum, as well as counsel's oral representations advanced at the hearing on Pioneer's motion, cannot be the basis for the circuit court's award of summary judgment. *See Au v. Au,* 63 Haw. 210, 213, 626 P.2d 173, 177 (1981); *see also Guaschino v. Eucalyptus, Inc.,* 3 Haw.App. 632, 637, 658 P.2d 888, 893 (1983). Indeed, those facts alleged that were unverified or improperly verified were not properly before the circuit court in its determination. *See Freitas v. City & County of Honolulu,* 58 Haw. 587, 589, 574 P.2d 529, 531 (1978); *see also Miller v. Manuel,* 9 Haw.App. 56, 69, 828 P.2d 286, 294 (1991), *cert. denied,* 72 Haw. 618, 841 P.2d 1075 (1992) (memorandum of law, standing alone, is *per se* insufficient to support an award of summary judgment).

Therefore, on this basis alone, we reverse and remand the matter to the circuit court for further proceedings consistent with this opinion. However, because the record shows apparent confusion regarding the Pioneer's burden of proving its case for adverse possession on a summary judgment motion, we will address Petitioners' third point of error on appeal.

2. *The Circuit Court and the ICA Incorrectly Placed the Burden of Persuasion upon the Nonmovant.*

As a threshold matter, we must determine whether White was in possession of the Lahaina property prior to his conveyance in 1880. If he was not in possession, then his conveyance in 1880, which was without authority, would render the possession of his successors-in-interest hostile or adverse. If he was in possession, then we must determine whether it was permissive or hostile.

a. *White's Possession*

Despite Pioneer's concession that the circuit court could infer that White temporarily possessed the property as a co-administrator between November 8, 1865 and July 25, 1866, *see* ICA's decision at 12, Pioneer argued, and the circuit court and the ICA agreed, that no evidence existed of White's possession of the property from July 1866 to 1880. Pioneer also argued, again with the circuit court and ICA's agreement, that no relevant law permitted the court to draw the inference that White remained in possession after being discharged as co-administrator. However, the standard of review regarding an order granting summary judgment is that:

> "The evidence must be viewed in the light most favorable to the non-moving party." *State ex rel. Bronster v. Yoshina,* 84 Hawai'i 179, 186, 932 P.2d 316, 323 (1997) (citing *Maguire v. Hilton Hotels Corp.,* 79 Hawai'i 110, 112, 899 P.2d 393, 395 (1995)). In other words, "we must view all of the evidence and the inferences drawn therefrom in the light most favorable to [the party opposing the motion]." *Maguire,* 79 Hawai'i at 112, 899 P.2d at 395 (citation omitted).

*State Farm Mut. Auto. Ins. Co. v. Murata,* 88 Hawai'i 284, 287–88, 965 P.2d 1284, 1287–88 (1998) (citation omitted) (brackets in original).

It is correct that this "court is permitted to draw only those inferences of which the evidence is reasonably susceptible and it may not resort to speculation." *See* ICA's decision at 5–6 (citing *Waimea Falls Park, Inc. v. Brown,* 6 Haw.App. 83, 97, 712 P.2d 1136, 1146 (1985) (citation omitted)). However, viewing the facts in the light most favorable to the Dunn Defendants, we believe that it is reasonable to infer that White remained in possession until he conveyed the property in 1880, in light of White's possession as co-administrator, from November 8, 1865 to

July 25, 1866, his possession upon receiving one-half of the property on February 5, 1867 until February 23, 1867, and his conveyance of the property in 1880 to his sons, William and Manase White. Therefore, we must determine whether White's possession was permissive or hostile.

### b. *The Presumption of Hostile Possession*

■ In addition to the formidable burden placed upon the movant in an adverse possession action under *Morinoue*, 86 Hawai'i at 81, 947 P.2d at 949, this court has also recognized a countervailing presumption.

> *In the absence of any explanation whatsoever,* "where one is shown to have been for the statutory period in actual, open, notorious, continuous and exclusive possession, apparently as owner, and such possession is unexplained, either by showing that it was under a lease from, or other contract with or otherwise by permission of the true owner, the presumption is that such possession was hostile." *Albertina v. Kapiolani Estate,* 14 Haw. 321, 325. *Kapiolani Estate, Ltd. v. A.S. Cleghorn,* 14 Haw. 330.

*Deponte,* 48 Haw. at 19, 395 P.2d at 275 (emphasis added); *see also Kalakaua v. Keaweamahi,* 4 Haw. 571, 573 (1883) ("A possession adversely commenced is presumed to continue adverse, so long as maintained."). "The element of hostility is satisfied by showing possession for oneself under a claim of right.... Such possession must import a denial of the owner's title ... [and be] established by clear and positive proof." *Okuna v. Nakahuna,* 60 Haw. 650, 656, 594 P.2d 128, 132 (1979) (citing *Redfearn v. Kuhia,* 53 Haw. 378, 381, 494 P.2d 562, 564 (1972)) (internal citations omitted). Thus, if the presumption of hostility remains unrebutted by the nonmovant, the presumption of hostility would satisfy the movant's burden of proving the element of hostility under *Morinoue* and *Okuna, supra.*

In the instant case, however, the Dunn Defendants adduced evidence plausibly explaining White's possession of the Lahaina property prior to the conveyance in 1880, both as a co-administrator, later discharged, and as a temporary one-half owner of the property approximately thirteen years prior

to his conveyance to William and Manase White. Therefore, the presumption of hostility did not arise in the instant case.

### c. *A Presumption of Permissive Possession*

■ It has been held that, "[i]n all cases ... of adverse possession[,] ... the character of the possession is a question for the jury." *Waianae Co. v. Kaiwilei,* 24 Haw. 1, 8 (1917); *see also Kapiolani Estate v. Cleghorn,* 14 Haw. 330, 338 (1902) (the only question presented to the jury was whether the possession was hostile/adverse); *Kahukuleionohi v. Kaikainahaole,* 6 Haw. 183, 184–85 (1876) (stating that evidence of whether possession was hostile or adverse should be submitted to the jury). In addition, this court has stated that,

> [i]f the defendant's occupation of the land was permissive in its inception the presumption was that it continued to be of the same nature and *the burden was upon the defendant [i.e., the adverse claimant]* to prove that by words or acts sufficient to give notice to the contrary to an ordinarily prudent and vigilant owner he, the defendant, had changed its character and was thereafter occupying adversely. In *Dowsett v. Maukeala,* 10 Haw. 166, 168, this court upheld an instruction stating that "where the occupation has been with the permission of the owner of the land, in order that adverse possession may begin to run it is necessary that some direct notice be given to the owner that the occupier is holding hostile to himself." The court said, referring to an occupation which in the beginning was permissive, "such tenancy would therefore, in law, be considered as continuing until some act of theirs" (meaning the adverse claimants) "changed their holding from the permissive nature to one of an adverse or hostile nature." In *Smith v. Hamakua Mill Co.,* 15 Haw. 648, 657, the court said: "Possession once shown to have been at its inception permissive or in subordination to the true owner's title, is presumed, in the absence of any showing to the contrary, to continue of the same character,—in other

words, the burden is on the possessor to show that it thereafter became hostile." *Smith,* 29 Haw. at 759 (emphasis and brackets added). Such permissive possession also continues with respect to successors-in-interest until such time as the adverse claimant shows, by words or acts sufficient to give notice to the contrary to an ordinarily prudent and vigilant owner, that he, she, or it, the adverse claimant, had changed its character and was thereafter occupying adversely. *See Tindle,* 512 P.2d at 178; *Johnson,* 179 P.2d at 1017.

With regard to the conversion of the nature of White's possession, the ICA concluded as a matter of law that, once discharged as estate co-administrator, White's possession became hostile, relying upon *Poka,* 44 Haw. at 479–80, 357 P.2d at 109, *Kalakaua,* 4 Haw. at 573, and *Kahukuleionohi,* 6 Haw. at 184. However, none of these cases presents an instance where the administrator was also awarded a one-half interest in the subject property. Here, White was also a one-half owner of Phillips's estate, including the Lahaina property, albeit temporarily. Therefore, in the instant case, White's discharge as co-administrator could not conclusively convert his permissive possession into a hostile one.

■ With regard to the presumption of permissiveness based upon a familial relationship, the ICA similarly rejected Petitioners' argument. A general rule exists creating a presumption of permissiveness for adverse claimants with a familial relationship to the true owner. *See* 3 Am. Jur.2d. *Adverse Possession* § 202 (Supp. 1997) (footnote omitted); *Petsch v. Widger,* 214 Neb. 390, 335 N.W.2d 254, 261 (1983); *Metze v. Meetze,* 231 S.C. 154, 97 S.E.2d 514, 515 (1957). However, the ICA interpreted *Yin,* which addressed the heightened obligation of claimants who are cotenants and closely related by ties of blood to give notice of adverse possession to other cotenants, to limit the general familial presumption to "family closely related by ties of blood." *Yin,* 52 Haw. at 540, 481 P.2d at 111–12. Because White was unrelated by blood to Kahoomaeha, the ICA concluded that the presumption of permissiveness did

not arise. Although we agree with the ICA that such presumption may be limited to familial relationships based upon ties of blood, we conclude that, inasmuch as White was the brother-in-law of Phillips, the husband of Kahoomaeha, Petitioners, at the very least, raised a genuine issue of material fact as to whether White possessed the land permissively, irrespective of the presumption.

Similarly, the ICA cursorily dismissed Petitioners' argument that a permissive presumption arose because White, as a previous one-half owner in the Lahaina property, was divested of title. The ICA stated that "only the court's conclusion on February 23, 1867 was possibly a 'judgment' and it did not 'divest' White of 'title' and vest 'title' in another." We are not so easily convinced that White was not divested of title when the probate court reconsidered its award to White of the one-half interest of the Phillips estate, including the Lahaina property, and awarded one hundred percent to Kahoomaeha's estate.

As the ICA stated, generally speaking, the continued possession of land after an entry of judgment divesting one in possession of title and vesting it in another is. not deemed to be adverse, but instead deemed permissive, until it is shown that notice of the hostile claim is brought home to the prevailing party. *See* ICA's decision at 16–17. "Therefore, where an adverse judgment divests a party of title and the divested party remains in permissive possession, the continuing possession of the successors in interest of the divested party is also presumptively permissive." *Id.* at 17 (citations omitted).

Based upon the foregoing, and absent evidence that the estate of Kahoomaeha had notice of White's repudiation of its title, White's possession presumptively remained permissive. The burden, therefore, is upon Pioneer to rebut this presumption with some evidence that White or any of his successors-in-interest (*e.g.,* Pioneer), converted the possession of the Lahaina property from permissive to hostile.

■ At this point in time, Pioneer has failed to present admissible evidence to the

circuit court regarding the element of the nature of the possession. Pioneer failed to prove that it was entitled to the fee simple interest of the Lahaina property based upon adverse possession as a matter of law. Therefore, the circuit court incorrectly awarded summary judgment in favor of Pioneer, and the ICA incorrectly affirmed that decision.

## III. *CONCLUSION*

We hold that Pioneer failed to prove all of the elements of adverse possession by clear and positive proof and was not entitled to judgment as a matter of law. We therefore reverse the decisions of the ICA and the circuit court and remand the matter to the circuit court for further proceedings consistent with this opinion.